524 P.2d 1009

Arthur MAES, Plaintiff-Appellee,

v.

JOHN C. CORNELL, INC., and their Insurance Carrier, Defendant-Appellant.

No. 1234.

Court of Appeals of New Mexico.

June 26, 1974.

**394**

Joseph A. Sommer, Sommer, Lawler & Scheuer, Santa Fe, for defendant-appellant.

John F. Quinn, Standley, Witt & Quinn, Santa Fe, for plaintiff-appellee.

## OPINION

LOPEZ, Judge.

In this workmen's compensation action, the claimant, a laborer, fell from a scaffold and sustained an injury arising out of and in the course of his employment. After holding positions as a doorman and a janitor, claimant returned to heavy physical labor. After one week on the job, he sustained another injury and subsequently underwent a laminectomy. Claimant received judgment for 50 percent temporary partial disability until January 10, 1972, permanent total disability thereafter and attorney's fees. He did not seek reimbursement for medical expenses.

The employer appeals the judgment raising the following issues: (1) sufficiency of the evidence; (2) variance between pleadings and proof; (3) sufficiency of the findings of fact to support the conclusions of law; (4) double recovery; and (5) attorney's fees. We affirm.

*Sufficiency of the evidence.*

■ The employer challenges the sufficiency of the evidence to support several of the trial court's findings. The challenged findings relate to causation, extent of disability and the permanence of the total disability.

The testimony of Dr. Emmett Altman, one of the claimant's treating physicians, established that as a medical probability claimant's "herniated disc syndrome" in the lumbosacral region resulted from the accident of December 10, 1970. The employer claims that Dr. Altman's opinion was based upon speculation and was, therefore, insufficient. See § 59–10–13.3(B), N.M.S.A. 1953 (Vol. 9, pt. 1). The contention is that since the claimant did not inform Dr. Altman of an earlier back injury occurring in September, 1970, and since Dr. Altman did not learn of that injury until cross-examination at trial, he could not judge the possible effect of the earlier accident. The employer relies upon the following excerpt from Dr. Altman's testimony:

"Q. Doctor, you have no way of knowing, do you, whether or not the injuries such as you say you found in April of 1971 were the result of the sccident [sic] of September 10, 1970, or the accident of December 10, 1970?

"A. That's true. I can only say that at the time of my examination he was an injured individual. I couldn't say which injury caused it.

" . . .

"Q. So its [sic] sheer speculation on your part to say whether he was injured on September 10th or the later date of December 10th?

"A. Yes."

The conclusions of Dr. Altman in the testimony set out above are premised upon the assumption that claimant suffered "lumbosacral sprain" in the first accident. The evidence, when viewed most favorably to the trial court's findings, does not support that assumption. The claimant testified on cross-examination as follows:

"Q. Do you recall that you were treated by Doctor Gonzales following the . . . [first] accident for lumbosacral sprain?

"A. Yes, sir, I do."

However, there is nothing in the record to indicate that the claimant knew where the lumbosacral region of his body was. In fact, claimant indicated a number of times that the first injury was in the mid-dorsal region of his back. He also specifically denied suffering any low back injury in the first accident. Assuming his testimony is contradictory, the conflict was for the trial court to resolve. See Rohrer v. Eidal International, 79 N.M. 711, 449 P.2d 81 (Ct.App.1968).

Since the trial court was justified in believing that the earlier injury was mid-dorsal, it could have concluded that it had no relation to the "herniated disc syndrome," which Dr. Altman described.

The employer next challenges the sufficiency of the evidence to support the trial court's two findings of disability. It argues that the finding of a disability of 50 percent until January 10, 1972, was arbitrary. However, Dr. Altman testified to a percentage disability as follows:

"Q. Now, he told you that he had been incapacitated for doing heavy type work since this accident; is that right?

"A. That's right.

"Q. Did you have an opinion as to his partial disability function at that time?

"A. I felt that at that time that he had 30 percent permanent impairment of function to the body as a whole of the low back, and in view of the fact that he couldn't do the labor that he had done all his life and it was—and was doing all light labor, he had fifty percent disability.

"Q. That would be fifty percent disability as far as workmen's compensation is concerned; is that right?

"A. Yes.

"THE COURT: This was in April of '71?

"A. No, January, sir.

"THE COURT: January of 1972."

The employer attacks the sufficiency of this statement to support the trial court's finding in two ways. First he points out that the 50 percent disability finding for the thirteen month period after the accident was based upon the existence of the "herniated disc syndrome" described by Dr. Altman. He argues that this syndrome was not even diagnosed until the end of the thirteen month period and that the earlier diagnosis made in April of 1971 was merely low back sprain.

Dr. Altman testified concerning his conclusions upon the January examination as follows: " . . . this sprain had gone on to the point where this was now irritating the nerve root and he was having a herniated disc syndrome. . . ." This and other testimony in the record indicates the progressive nature of the disease. Given these facts we think the trial court was justified in considering the "low back sprain" as a component of the "herniated disc syndrome."

Although the employer admits for the purposes of argument on this point that the claimant could not perform the, " * * * usual tasks in the work he was performing at the time of his injury * * *," he

argues secondly that there is no evidence that claimant was, " * * * unable to some percentage-extent to perform any work for which he is fitted by age, education, training, general physical and mental capacity and previous work experience." Section 59–10–12.19, N.M.S.A. 1953 (Vol. 9, pt. 1, Supp.1973).

Claimant worked as a doorman and a janitor for the State of New Mexico after the accident in question. Before the accident claimant worked as a "grease monkey." There is no showing in the record whether this occupation involved heavy physical labor. The claim is that there was no evidence establishing that claimant could not "to some percentage-extent" perform the tasks in the occupations mentioned above.

A similar claim is made with respect to the finding of total disability, which is defined in § 59–10–12.18, N.M.S.A.1953 (Vol. 9, pt. 1, Supp.1973), as follows:

> "*Total disability.*—As used in the Workmen's Compensation Act [59–10–1 to 59–10–37], 'total disability' means a condition whereby a workman, by reason of an injury arising out of, and in the course of, his employment, is wholly unable to perform the usual tasks in the work he was performing at the time of his injury, and is wholly unable to perform any work for which he is fitted by age, education, training, general physical and mental capacity, and previous work experience."

Since claimant is obviously not wholly unable to be a janitor or a doorman, and since the record is silent on whether he could be a "grease monkey," the employer claims that the finding of total disability is unsupported. Also, the employer points out that the claimant completed a three month electronics course. It contends that electronics assembly, therefore, is work for which the claimant is fitted by training.

It is established by substantial evidence that the claimant is fitted for heavy, physical labor. There is substantial evidence that he cannot perform that type of work. Both of the employer's contentions concerning extent of disability turn on the question of whether the occupations alluded to above are work for which the claimant is fitted under the statute.

The employer seems to contend that any post-injury employment is necessarily work for which a claimant is fitted. It would follow that the fact of post-injury employment would disqualify the claimant from receiving total disability. With this proposition we disagree. We do not think that the reemployment efforts of a claimant should, in effect, penalize him. See *Adams v. Loffland Brothers Drilling Company,* 82 N.M. 72, 475 P.2d 466 (Ct.App. 1970).

In *Brown v. Safeway Stores, Inc.,* 82 N. M. 424, 483 P.2d 305 (Ct.App.1970), we stated:

> " * * * [A]fter plaintiff has introduced evidence as to his age, education, training, and general physical and mental capacity, the burden of coming forward is on the defendant. It is much easier for the defendant to prove the employability of the plaintiff for a particular job than for plaintiff to try to prove the universal negative of not being employable at any work. * * *"

Keeping this principle in mind, we will review the record to determine whether the employer has made a showing, as a matter of law, that the plaintiff is fitted for one of the occupations mentioned. Concerning the occupation of "grease monkey," we have mentioned that the record fails to disclose whether it involves lifting, bending or other hard physical labor which the claimant could not perform. As to this occupation, the trial court would have been justified in concluding that the employer failed to meet his burden of proof.

Claimant worked as a doorman for the state legislature and since doormen were apparently needed only for the legislative session, we think the trial court could have

concluded that these services are limited in quantity and dependability.

The record would support the conclusion that plaintiff did not in fact perform the tasks usually associated with that occupation. The testimony was that he did "light work" and that the most strenuous task he performed was washing windows. Furthermore, the record indicates that claimant was hired and later fired for political reasons. The trial court could have concluded that services which are dependent upon the changing political situation are undependable.

Finally, there is some testimony that claimant suffered pain in performing his tasks in both of these occupations. In Adams v. Loffland Brothers Drilling Company, supra, we held that the trial court was justified in considering this factor in determining the effect of post-injury employment on a claim for total disability.

In Brown v. Safeway Stores, Inc., supra, we stated:

"In the present case there is substantial evidence to support the finding of total disability and this evidence is not overcome by the fact that the plaintiff is presently a university student. Defendant has cited no authority suggesting that being a student is being employed and we have found none."

This case is similar with respect to claimant's three month course in electronics assembly. The record, if anything, supports the conclusion that there was no market for anyone with such limited training. Indeed, there is authority for the proposition that post-injury training should not be allowed to reduce an award. See 2 Larson's, Workmen's Compensation Law, § 57.33 (7th Ed. 1970). The employer did not prove, as a matter of law, that claimant's post-injury work history was inconsistent with the court's findings.

The employer finally argues that there is insufficient evidence to support the trial court's finding that the disability was permanent. Dr. Altman testified as follows:

"THE COURT: I take it then your opinion is that absent the benefits of surgery his disability was permanent?

"A. Yes sir."

The employer attacks the sufficiency of this statement to support the finding since claimant underwent surgery. However, there is testimony in the record that supports the conclusion that even with surgery the claimant would probably not be able to go back to heavy, physical labor. Furthermore, there was the following testimony of Dr. Altman concerning permanence:

"Q. Do you think, under the condition that you found him with your examination of January 10th, 1972, that he would be able to go back with this back and shovel gravel?

"A. I certainly would not have recommended it. I wouldn't believe that he could ever do it."

There was sufficient evidence to support all the challenged findings.

*Variance.*

The claimant in his complaint sought compensation for "temporary total disability" and "permanent partial disability." The trial court awarded judgment for temporary partial disability and permanent total disability. Claimant never amended his complaint to include a request for either of the latter. The employer does not dispute the variance between the temporary total disability plead and the temporary partial disability awarded. See Texas Employers' Ins. Ass'n v. Moyer, 236 S.W.2d 231 (Tex.Civ.App.1951). The employer does contend that the award for permanent total disability fatally varied from the permanent partial disability plead.

The question here is not how a new issue can be raised but of whether a new issue was raised at all.

Total and partial disability are defined separately in the Workmen's Compensation Act. See §§ 59–10–12.18 and 59–10–12.19, supra. But they differ only in that § 59–10–12.18, supra, uses the phrase " * * *

is wholly unable to perform  * * *," where § 59–10–12.19, supra, says " * * * is unable to some percentage-extent to perform  * * *." In effect these two statutes establish a continuum from zero to total disability through all percentages of partial disability. Partial and total disability are therefore not two separate concepts or issues but two segments of one disability continuum. No new issue was raised.

### Sufficiency of the findings to support the conclusions of disability.

■ The Court in Quintana v. Trotz Construction Company, 79 N.M. 109, 440 P.2d 301 (1968), summarized the history of the definition of total disability. Before 1959 the standard was ability to "obtain and retain gainful employment." The 1959 law changed the test to "wage earning ability." The 1963 amendment, which enunciates the present test, changed the test to " * * * capacity to perform work as delineated in the statute, [§ 59–10–12.18, supra]." Quintana v. Trotz Construction Company, supra. The court's findings with respect to disability are couched in part in terms of the pre-1959 test. The court found that the claimant was unable to "gain and retain" work as delineated in the statute.

The employer indicates that the findings show that the trial court used the wrong legal standard. Assuming that to be the case, the employer does not contend that the pre-1959 standard contained a less rigorous burden of proof than that embodied in the present test. The court in *Quintana* stated that there was no, " * * * evident purpose to in any way alter the desirable objectives of workmen's compensation insurance  * * *," in the 1963 amendment.

We feel that to accept the employer's contention would be to require that the trial courts use the "magic words" of the statutes in making their findings of disability. There is no need for such a requirement. Language which conveys the impression that the statutory conditions are present is sufficient.

### Double recovery.

■ The plaintiff testified that he was receiving permanent total disability payments at the time of trial from Lamoreux Construction Company, his employer at the time he received a later back injury in October, 1972. The employer involved in the present litigation contends that to allow permanent recovery here for the same injury would allow a double recovery.

Section 59–10–18.8(D), N.M.S.A. 1953 (Vol. 9, pt. 1, Supp.1973), states:

" * * * the compensation benefits payable by reason of disability caused by accidental injury shall be reduced by the compensation benefits paid or payable on account of any *prior* injury suffered by the workman if compensation benefits in both instances are for injury to the same member or function,  * * * and if the compensation benefits payable on account of the subsequent injury would, in whole or in part, duplicate the benefits paid or payable on account of such prior injury." [Emphasis added]

By its terms, this section does not apply to the situation in the instant case because the payments for which a credit is sought result from a subsequent not a prior accident.

■ The employer argues that § 59–10–18.8(D), supra, is written to cover the more normal situation where payments are made for the prior injury and further compensation is sought for the subsequent injury. The employer states that the statute manifests a, ". . . clear [legislative] intention that a workman not be compensated for injury to the same member of function twice. . . ."

We do not read § 59–10–18.8(D), supra, so narrowly. It is not merely a device for preventing a double recovery. It is an affirmative allocation of the burden in a successive injuries situation. That burden falls squarely upon the employer at the time of the prior injury. The fact that the subsequent employer has made some payments can be of no aid to this employer.

*Attorney's fees.*

 The employer claims the award of $3,440.00 for attorney's fees was an abuse of discretion. The thrust of the argument is that the case required so little effort by the claimant's attorney that the fee was excessive. This argument ignores the very substantial results achieved on behalf of the claimant. There was no abuse of discretion.

The claimant is awarded $750.00 for attorney's fees in connection with this appeal. The judgment is affirmed.

It is so ordered.

HENDLEY and HERNANDEZ, JJ., concur.