711 P.2d 908

**Charles E. AMOS, Plaintiff-Appellee,**

**v.**

**GILBERT WESTERN CORPORATION, Employer, and the Aetna Casualty and Surety Company, Insurer, Defendants-Appellants.**

**No. 8225.**

Court of Appeals of New Mexico.

Nov. 19, 1985.

Hal Simmons, Albuquerque, for plaintiff-appellee.

Gregory V. Pelton, Beall & Dawe, Albuquerque, for defendants-appellants.

## OPINION

DONNELLY, Chief Judge.

Defendants appeal from an order of the district court determining that claimant was temporarily totally disabled and awarding compensation benefits and attorneys fees. On appeal defendants challenge: (1) whether substantial evidence exists to support the award of temporary total benefits; (2) whether claimant satisfied the requisite burden of proof establishing duration of the award; (3) the computa-

tion of the award; and (4) the reasonableness of attorneys fees. We affirm in part and reverse in part.

### FACTS

Claimant, Charles E. Amos, injured his back and right ankle on November 29, 1983, while working as a heavy equipment operator for defendant Gilbert Western Corporation (GWC). Claimant lost his grip and fell upon the frozen ground at the jobsite, as he was descending the ladder of a front loader. Defendants were timely notified of claimant's accident. Claimant was examined by a company doctor and returned to work the next day.

Within a week after his fall, claimant began experiencing increased back pain and was reassigned to work in a company warehouse. Claimant testified that his continued back pain made him unable to perform his assigned work as a warehouseman. On the day following his reassignment to warehouse work, he phoned in reporting that he was sick. Thereafter, GWC terminated claimant and gave him his last paycheck for the period ending December 24, 1983.

Claimant continued to complain of back problems and was treated by Dr. Stephen Feagler, an orthopedic surgeon. Dr. Feagler performed a myelogram and re-fused a vertebrae in claimant's spine. Claimant had undergone a previous spinal fusion in 1978. The second spinal fusion operation was performed in April, 1984. Trial was held on claimant's workmen's compensation claim on September 13, 1984, approximately four and one-half months after this surgery. Plaintiff testified that Dr. Feagler had advised him not to resume working until the final results of the surgery were determined. Claimant stated that his back still was painful and that he could not walk, stand or sit for extended periods without considerable discomfort.

Dr. Feagler testified that, in his opinion, claimant had aggravated his preexisting back condition when he fell from the machine. Dr. Feagler had advised claimant that he should be restricted from performing work activities stressful to the fusion area during the initial six-month postoperative healing period. Dr. Feagler also testified that he had recommended that claimant not resume operating heavy equipment for a living, and that he should avoid driving a semi-truck, riding over rough terrain, overhead lifting or other similar types of work which could reinjure his back.

Dr. Feagler stated that claimant would need at least a six-month postoperative healing period and that he would not know whether the fusion was successful "for some time to come." Dr. Feagler indicated that this period could take as long as one year after the operation. Dr. Feagler also stated he thought that claimant might be able to return to light work activity approximately six months after his latest fusion operation; however, as of the date of trial, he testified that he had not released claimant to return to work. In his deposition introduced at trial, Dr. Feagler also testified that, in his opinion, claimant had an eighty-percent chance of regaining the physical condition which he had prior to his accident.

Claimant testified that he had attempted to work at a carpet cleaning business and that he had occasionally assisted his wife in the operation of a bar. His wife testified that her husband continued to suffer from back trouble and that his general activities were extremely limited.

Following trial, the court adopted findings of fact and conclusions of law. The court found that claimant was temporarily totally disabled from performing any of the kinds of work for which he was suited and concluded that claimant should be awarded weekly compensation payments commencing December 24, 1983 on a weekly basis and continuing until further order of the court. The court also awarded medical and vocational rehabilitation expenses, together with attorneys fees, in the sum of $12,-976.00.

### I. TOTAL DISABILITY; EFFECT OF POST INJURY EMPLOYMENT

Defendants challenge the sufficiency of the evidence to support the trial court's

finding that claimant was wholly unable to perform any work for which he was reasonably fitted during the period immediately after the injury and prior to the second surgery. In furtherance of this argument, defendants cite evidence of claimant's prior employment history, the medical testimony bearing upon his physical condition and his post-injury work. They point to evidence indicating that he performed light duties in a bar managed by his wife between December 4, 1983, and April 24, 1984, for which he was paid approximately $1,700.00. Defendants concede plaintiff's partial disability from December 24, 1983 through April 24, 1984, but contend there was no total disability for that time period.

Claimant testified that during the time of his post-injury employment he did not receive any workmen's compensation payments nor payment of his medical expenses. He stated that although he received some payment for assisting his wife in the bar, the work was "make-work" or generally unskilled work, on a restricted and limited basis. During this time, claimant was still under the care of a physician, was taking medication, and was not released to return to work.

Dr. Faegler testified that he treated claimant conservatively with medication and prescribed exercises from December, 1983 to April 24, 1984. He found that claimant's back problems were of such severity as to require a second back fusion on April 24, 1984.

■ Post-injury employment does not preclude, as a matter of law, a finding of total temporary disability. Not all post-injury employment efforts of a claimant disqualify him from receiving total disability. *Maes v. John C. Cornell, Inc.*, 86 N.M. 393, 524 P.2d 1009 (Ct.App.1974). *See also Adams v. Loffland Brothers Drilling Co.*, 82 N.M. 72, 475 P.2d 466 (Ct.App.1970). Whether evidence of post-injury employment is indicative that the injured workman is only partially rather than totally disabled depends upon the particular facts of each individual case. *E.g., Maes v. John C. Cornell, Inc.*

In *Adams v. Loffland Brothers Drilling Co.*, a workman was found to be totally disabled despite evidence adduced at trial that he had sought and obtained some post-injury employment. Employer argued that the workman's post-injury employment precluded him, as a matter of law, from being adjudicated to be totally and permanently disabled. The court stated: "'[t]o hold that the employer's liability should be diminished because his injured workman has seen fit to suffer the discomforts of his infirmity and obtain employment, rather than to simply exist on the compensation the law allows him, seems inconsistent with the purpose and extent of the workmen's compensation act.'" 82 N.M. at 75, 475 P.2d at 469 (quoting from *Evans v. Stearns-Roger Manufacturing Co.*, 253 F.2d 383 (10th Cir.1958)). *See also Salazar v. Kaiser Steel Corp.*, 85 N.M. 254, 511 P.2d 580 (Ct.App.) (fact that claimants worked for varying periods of time after the date they were found to be totally disabled did not require a ruling that they were not totally disabled as a matter of law), *cert. denied*, 85 N.M. 229, 511 P.2d 555 (1973).

Our review of the evidence also indicates that the trial court's finding that claimant was totally disabled is supported by substantial evidence. Findings adopted by the trial court will not be disturbed on appeal if they are predicated upon substantial evidence. *Cardenas v. United Nuclear Homestake Partners*, 97 N.M. 46, 636 P.2d 317 (Ct.App.1981).

## II. TEMPORARY TOTAL DISABILITY: SUFFICIENCY OF EVIDENCE AND BURDEN OF PROOF

Defendants contend that claimant failed to establish by the requisite burden of proof the fact that he was totally disabled. Defendants assert that claimant failed to prove that he was totally disabled during the following times: (1) from a point approximately three months after his surgery on April 25, 1984, to date of trial, September 13, 1984; and (2) for an indefinite peri-

od following trial that justifies continuing benefits. Defendants concede a period of total disability during the three months following surgery but contend claimant failed to establish further disability. Defendants contend that claimant was required to establish by competent evidence, a point in the future to which his disability would continue in order to qualify for continuing disability benefits.

The standard of proof required to establish total disability under the Workmen's Compensation Act is a preponderance of the evidence. *Lujan v. Circle K Corp.*, 94 N.M. 719, 616 P.2d 432 (Ct.App.1980). In *Brown v. Safeway Stores, Inc.*, 82 N.M. 424, 483 P.2d 305 (Ct.App.1970), this court adopted defendant's contention that claimant has the duty of showing that he was disabled from doing any work for which he was fitted by age, education, training and previous experience. The court stated:

> [P]roof of the disability is on the plaintiff, but after plaintiff has introduced evidence as to his age, education, training, and general physical and mental capacity, the burden of coming forward is on the defendant. It is much easier for the defendant to prove the employability of the plaintiff for a particular job than for plaintiff to try to prove the universal negative of not being employable at any work.

*Id.* at 427, 483 P.2d at 308.

A finding of total disability within the requirements of NMSA 1978, Section 52–1–24, involves a two-prong test, each of which must be proven by claimant at trial: (1) complete inability to perform the usual tasks in the work he was performing at the time of the injury; and (2) absolute inability to perform any work for which he is fitted by age, education, training and previous experience. *Schober v. Mountain Bell Telephone*, 96 N.M. 376, 630 P.2d 1231 (1980); *Quintana v. Trotz Construction Co.*, 79 N.M. 109, 440 P.2d 301 (1968). "Any work," as used in Section 52–1–24, means a worker's ordinary employment or such other employment, if any, approximating the same livelihood the worker might be expected to follow in view of his circumstances and capabilities. *Aranda v. Mississippi Chemical Corp.*, 93 N.M. 412, 600 P.2d 1202 (Ct.App.), *cert. denied*, 93 N.M. 683, 604 P.2d 821 (1979).

Under New Mexico law the burden of proof required to establish total disability is initially upon the injured workman. He must establish that he is incapacitated from performing any work at any gainful occupation for which he is reasonably suited by age, education, training and previous experience. *Brown v. Safeway, Stores, Inc.* Once the workman has presented proof of such disability, the burden of coming forward with the evidence is then shifted to the employer to demonstrate the employability of claimant for a particular job for which he is reasonably fitted. *Id.*

Where the evidence supports a finding of temporary disability, which continues indefinitely until some future change occurs, the trial court may direct payment of workmen's compensation total disability benefits pending a showing that the disability has diminished or no longer exists. *See Pacheco v. Alamo Sheet Metal Works, Inc.*, 91 N.M. 730, 580 P.2d 498 (Ct.App. 1978); *Goolsby v. Pucci Distributing Co.*, 80 N.M. 59, 451 P.2d 308 (Ct.App.1969). *Compare Short v. Associated Milk Producers, Inc.*, 92 N.M. 204, 585 P.2d 649 (Ct.App.1978) (upholding on appeal the trial court's order, which awarded a workman compensation for temporary total disability and directed parties to appear before court approximately nine months thereafter for redetermination of claimant's condition).

GWC argues that the Workmen's Compensation Act does not articulate that an employer has the burden of proving that a disability has ended. We disagree. Once plaintiff has obtained a judgment of disability, a subsequent change in plaintiff's condition is a factual matter to be resolved at an evidentiary hearing resulting in new findings and judgment. *Goolsby v. Pucci Distributing Co.* With regard to diminution or termination of compensation, Section 52–1–56(A) states:

The district court in which any workman has been awarded compensation under the Workmen's Compensation Act [citation omitted] may, upon the application of the employer, workman or other person bound by the judgment, fix a time and place for hearing upon the issue of claimant's recovery and if it shall appear upon such hearing that diminution or termination of disability has taken place, the court shall order dimunition or termination of payments of compensation as the facts may warrant * * *. [I]n the event the employer or other person upon whose application the hearing is had to diminish or terminate compensation shall be unsuccessful in diminishing or terminating the compensation previously awarded to the workman, the workman shall be entitled to recover from applicant all reasonable and necessary expenses incidental to his attending the hearing * * * [;] the compensation of the workman as previously awarded shall continue while the hearing is pending * * *.

At a hearing on such motion, a movant has the burden of establishing that claimant's prior disability has in fact diminished or terminated. 3 A. Larson, *The Law of Workmen's Compensation,* § 81.33(c) (1983).

Larson observes:

The burden of proof of showing a change in condition is normally on the party, whether claimant or employer, asserting the change * * *. This burden usually requires only that the facts justifying modification be established by a preponderance of the evidence * * *. [I]t is clear that the party with the burden of proof cannot prevail without putting on any evidence, even if the other party fails to appear.

*Id.* at 15–554.72, 15–554.73, 15–554.77.

■ Once a condition is shown to exist, the law presumes that such status continues to exist, so long as is usual with things of that nature. *In re Estate of Bivians,* 98 N.M. 722, 652 P.2d 744 (Ct.App.), *cert. quashed,* 98 N.M. 762, 652 P.2d 1213 (1982).

GWC also argues that any award of temporary disability from three months after surgery to an indefinite time after the date of trial is based upon speculation and conjecture. The evidence and record contraverts this assertion. Dr. Feagler testified that as of the time of trial he had not released claimant to return to work and that he did not know if claimant was capable of performing work or if any type of work for which claimant was reasonably fitted was available. Dr. Feagler also stated that claimant would need at least a six-month healing period following his surgery and that it would take some time to determine if the operation to re-fuse claimant's vertebrae was successful. Additionally, claimant testified that he was unable to stand or sit without extreme discomfort.

■ Pursuant to Section 52-1-56, once a workman receives an award for total temporary disability which does not specify a precise date for termination or reevaluation of the disability, an employer seeking modification of the award has the burden of proof to establish that the workman's disability has diminished or terminated. Thus, that burden of proof remains with GWC. *Compare Jaramillo v. Kaufman Plumbing & Heating Co.,* 708 P.2d 312 (1985).

■ Under the facts herein, claimant presented substantial evidence to support the trial court's finding of temporary total disability.

### III. COMPUTATION OF AWARD

GWC asserts that the trial court erred in determining that claimant was entitled to the payment of weekly workmen's compensation benefits of $289.20. The trial court found that the maximum benefit payable to claimant in January 1984 was $289.20 and that the maximum benefit allowed under the Workmen's Compensation Act in 1983 was $271.76 per week.

The decision entered by the trial court on October 3, 1984, *inter alia* concluded that "[d]efendants withheld medical expenses and workmen's compensation benefit [sic]

for no rational reason, and the rate of workmen's compensation is the rate in effect upon the date of judgment." The court's finding no. 16 found that claimant's "back injury and resulting back fusion was proximately caused by his fall * * * on November 29, 1983 * * * and his disability, based on medical probability, was a direct result of said fall * * *."

The trial court found that claimant's disability occurred in 1983. However, following his injury, the court computed the rate of weekly compensation based on the increased statutory rate in effect in 1984.

■ In *Varos v. Union Oil Co. of California*, 101 N.M. 713, 688 P.2d 31 (Ct.App. 1984), this court overruled its prior decision in *Purcella v. Navajo Freight Lines*, 95 N.M. 306, 621 P.2d 523 (Ct.App.1980), stating that NMSA 1978, Section 52–1–48 controls the allowable rate of workmen's compensation payable when a workman is disabled. Section 52–1–48 provides that disability benefits shall be based on the rate of compensation "in effect on the date of accidental injury resulting in the disability." The court in *Varos* found that to construe the applicable time as the date on which the trial court determines disability would nullify the statutory provision. Our ruling in *Varos* necessitates that the trial court's award of compensation payments be modified to reflect the amount of benefits properly payable on the date of the workman's accidental injury resulting in disability, not the amount payable at time of trial.

## IV. AMOUNT OF ATTORNEY FEES

GWC asserts as its final point on appeal that the trial court's award of attorney fees in the sum of $12,976.60, inclusive of gross receipts tax, was excessive.

Defendants argue that it is an abuse of discretion to award claimant attorneys fees in excess of $12,000 where his benefits are predicated upon a finding of temporary total disability and are susceptible to future reduction or termination. GWC also contends that although claimant's counsel testified that his normal hourly fee was $85,

an award of $12,400 constitutes an hourly rate of approximately $240 per hour.

The trial court conducted a separate hearing on the requested amount of attorney fees and entered its judgment, noting that it had considered "all those items recited in the Fryar II decision". However, the court did not enter any findings as to the present value of the claimant's compensation award nor any additional findings regarding its award of attorney fees.

■ In *Woodson v. Phillips Petroleum Co.*, 102 N.M. 333, 695 P.2d 483 (1985), Justice Federici, speaking for the supreme court, stated that Section 52–1–54 of the Workmen's Compensation Act does not specify that attorney fees shall be computed based upon any specific percentage of the benefits awarded to the workman. The court held that the "statute requires, however, that in fixing a reasonable attorney fee the court consider the 'present value of the award made in the workman's favor.' " *Id.* at 337, 695 P.2d at 487 (quoting from NMSA 1978, § 52–1–54(D)(2)). The court also held that determination of the present value of the award is one of two factors prescribed by statute which must be considered. The other factor is the amount of any settlement offer and the stage of the proceeding at which the settlement offer was made. The court in *Woodson* also emphasized that determination of the present value of the workman's award was a significant factor to be considered in setting an attorney's fee.

In *Sanchez v. Homestake Mining Co.*, 102 N.M. 473, 697 P.2d 156 (Ct.App.1985), this court noted that *Woodson v. Phillips Petroleum Co.* overruled in part the requirement specified in *Jennings v. Gabaldon*, 97 N.M. 416, 640 P.2d 522 (Ct.App. 1982), that the trial court must enter findings on each of the factors set out in *Johnsen v. Fryar*, 96 N.M. 323, 630 P.2d 275 (Ct.App.1980). In *Sanchez*, the court stated: "[w]e read *Woodson* to require the trial court to make specific findings of fact" in its award of attorneys fees concerning the factors for which there is evi-

dentiary support. *Id.* at 479, 697 P.2d at 162.

A review of the matters submitted to the trial court supporting claimant's request for an award of attorney fees indicates that claimant contends by affidavit that the present value of his compensation award is $163,000, "if not reduced." The figure presented by claimant as constituting the present value of the compensation award was not in fact actually reduced to its present value, but instead comprises the amount of weekly compensation awarded to claimant multiplied by 600 weeks.

Defendants also contend that it was error for the trial court to premise its award of attorney fees based upon an erroneous computation of the present value of the award calculated over a period of 600 weeks, when the court found that claimant was temporarily totally disabled. In determining the amount of the proper award of attorney fees, the trial court should calculate the award in part upon the evidence in the case indicating whether there is a likelihood that the disability will extend beyond a six-month period. *See Fitch v. Sam Tanksley Trucking Co.*, 95 N.M. 477, 623 P.2d 991 (Ct.App.1980). In *Fitch,* the court stated:

> [W]e also believe it improper in considering that factor [escalated benefits] as it bears on the amount of fees, to establish the present value of the workman's award as including amounts over a figure due or to become due within six months beyond the date the award is granted, in the absence of *evidence directed to the benefits continuing beyond the six-month period.* [Emphasis added.]

*Id.* at 480, 623 P.2d at 994. *Compare Marz v. Kerr-McGee Nuclear Corp.,* 93 N.M. 9, 595 P.2d 1204 (Ct.App.), *cert. denied,* 92 N.M. 532, 591 P.2d 286 (1979). The award of attorney fees calculated by the trial court erroneously predicated the amount of compensation pursuant to the rule stated in *Purcella v. Navajo Freight Lines.* We remand for a recalculation of the award of attorneys fees consistent with the criteria set forth in *Woodson v. Phillips Petroleum Co.; Sanchez v. Homestake Mining Co.;* and *Fitch v. Sam Tanksley Trucking Co.*

The trial court's award to claimant of temporary total disability compensation, medical expenses, and vocational rehabilitation expenses is affirmed. We reverse for redetermination of the amount of compensation in effect at the time of claimant's disability and for recalculation of the award of attorneys fees.

Claimant is awarded the sum of $1,750 for attorneys fees incident to this appeal.

IT IS SO ORDERED.

MINZNER and GARCIA, JJ., concur.