881 P.2d 706

**Becky MURPHY, Claimant–
Appellant/Cross–
Appellee,**

v.

**DUKE CITY PIZZA, INC. and Travelers
Insurance Company, Respondents–
Appellees/Cross–Appellants.**

**No. 14431.**

Court of Appeals of New Mexico.

June 27, 1994.

Certiorari Denied Sept. 1, 1994.

Charles G. Berry, Charles G. Berry & Associates, P.A., Albuquerque, for claimant-appellant.

Donald C. Schutte, Schutte & Trafton, P.C., Albuquerque, for respondents-appellees.

## OPINION

MINZNER, Chief Judge.

Worker appeals several aspects of the workers' compensation judge's (judge's) award of attorney fees, including (1) whether the $12,500 attorney fee cap is constitutional, (2) whether the judge erred in denying Worker's claim for additional bad faith attorney fees, and (3) whether Worker should be required to pay 25% of her attorney fees. Employer cross-appealed, raising four issues: (1) whether the judge erred in denying Employer's claim for a credit for overpayment of benefits, (2) whether the judge erred in awarding Worker scheduled injury benefits for her arm instead of her hand, (3) whether the judge erred in her award of vocational rehabilitation benefits, and (4) whether the judge erred in awarding Worker her fee for her vocational rehabilitation expert witness. We affirm in part and reverse in part on Employer's cross-appeal. We affirm the judge's denial of bad faith attorney fees to Worker. Because we partially reverse the judge's award of benefits, we do not address Worker's constitutional challenge to the attorney fee cap. Because we do not address the constitutional challenge, we do not rule on Worker's motion to file a brief in excess of the page limitation imposed by SCRA 1986, 12–213(F) (Repl.1992). However, we note that except in extraordinary circumstances, this Court is reluctant to permit briefs substantially in excess of the page limitation.

*FACTS*

Worker was a pizza delivery driver for Employer, a Domino's Pizza franchise. During the scope and course of her employment, Worker was involved in a roll-over accident and suffered severe injuries to her left hand. The parties stipulated that Worker reached maximum medical improvement as of December 26, 1991. Worker contended that she was temporarily totally disabled as a result of the injuries to her left hand prior to the date of maximum medical improvement. Employer contended that except for short periods of temporary total disability when Worker was recovering from post-accident surgical procedures, Worker was only partially disabled prior to maximum medical improvement.

The injuries that Worker suffered were to her left, non-dexterous, hand. Worker was assessed with a 48% impairment to her left hand and a 43% impairment to her left upper extremity. Worker's treating physician was questioned regarding why he believed Worker had an injury to her left upper extremity when only Worker's left hand was injured in the accident. The doctor testified that it was his belief that "an injury to the hand is the same as an injury to the upper extremity. An arm without a hand is a paperweight and that's all."

Worker presented expert testimony from a vocational rehabilitation expert indicating that Worker was totally incapacitated from employment because she lacked transferrable skills that would have enabled her to obtain employment prior to reaching maximum medical improvement. In contrast, Employer's vocational rehabilitation expert testified that Worker had many transferrable skills that would have allowed her to obtain suitable employment. Worker herself testified that the loss of function in her hand would have prevented her from performing her former job. She further testified that the pain she felt from the injuries to her hand was so intense that she was unable to work. Worker did acknowledge that she was able to attend college and obtain a bachelor's degree in mathematics despite her injury. She also indicated that after receiving her bachelor's degree in May of 1991 she ob-

tained a graduate assistant position at the University of New Mexico. Ultimately, the judge ruled that Worker was temporarily totally disabled until the date of maximum medical improvement.

Worker also sought and obtained vocational rehabilitation benefits. Worker presented testimony from a vocational expert who would have recommended an academic pursuit such as Worker's bachelor's degree as an appropriate vocational rehabilitation plan. Employer introduced conflicting testimony from its vocational expert indicating that Worker was able to return to modified work with her Employer, modified work with other employers in the same industry, and work in unrelated industries based on Worker's skills, education, and experience. Employer's vocational expert was of the opinion that, with the exception of some short-term, on-the-job training to learn specific skills necessary to perform specific job tasks, Worker needed no further formal vocational rehabilitation to return her to suitable employment. The judge awarded Worker vocational rehabilitation benefits in the form of reimbursement for college expenses that Worker incurred while recovering from her injury until she received her bachelor's degree in May of 1991.

Worker also requested an award of attorney fees. The judge found that a reasonable attorney fee for Worker's attorney would have been $48,750. However, in light of the attorney fee cap found in NMSA 1978, Section 52–1–54(G) (Repl.Pamp.1991) (effective until January 1, 1991), the judge limited the award of attorney fees for Worker to $12,500.

Worker sought to have the judge exceed the $12,500 attorney fee cap by asserting a claim of bad faith against Employer. Worker contended that Employer stonewalled Worker's claim without reasonable basis by not giving Worker all the treatment she needed to recover, by unreasonably contesting whether Worker worked full-time and would have received tips and commissions, by not informing Worker of her right to vocational rehabilitation benefits, by making a claim for reimbursement for overpayment of benefits in retaliation for Worker's bad faith claim, and by engaging in a general pattern

of behavior calculated to force Worker to settle her claim for less than what she was entitled to receive. After a hearing on the matter of attorney fees, the judge rejected Worker's bad faith claim by granting Employer's motion for directed verdict on the issue. Further facts will be set forth below as relevant to the issues discussed in this opinion.

## I. WORKER'S DIRECT APPEAL

### A. Constitutionality of Cap

Worker contends that the attorney fee cap found in Section 52–1–54(G) is unconstitutional. Because we are reversing the judge's award of scheduled injury benefits and vocational rehabilitation benefits, the judge will need to recalculate attorney fees to reflect the change in benefits recovered by Worker's attorney. Accordingly, we will not address Worker's constitutional challenge to the attorney fee cap at this time. *See Feese v. U.S. West Serv. Link, Inc.,* 113 N.M. 92, 96, 823 P.2d 334, 338 (Ct.App.1991) (constitutionality of cap will not be addressed until issue is ripe for review). In the event the judge recalculates Worker's reasonable attorney fees to still be in excess of the $12,500 cap, Worker may challenge the constitutionality of the cap at that time.

### B. Bad Faith

■ Worker argues that the judge erred in refusing to find bad faith on Employer's part and award additional attorney fees as provided by Section 52–1–54(G). In essence, Worker contends that there was not substantial evidence to support the judge's finding of no bad faith. The judge directed a verdict against Worker on the issue of bad faith at the close of her presentation on the issue. Because a trial judge in a bench trial may evaluate the evidence and dismiss a case at the end of a plaintiff's case under SCRA 1986, 1–041(B) (Repl.1992), which ruling will then be reviewed under normal substantial evidence principles, *White v. City of Lovington,* 78 N.M. 628, 629, 435 P.2d 1010, 1011 (Ct.App.1967), the question for us on review is whether it was rational for the judge to disbelieve the evidence offered in support of a finding of bad faith, *see Sosa v. Empire*

*Roofing Co.,* 110 N.M. 614, 616, 798 P.2d 215, 217 (Ct.App.1990).

■ Worker points to a number of Employer's actions as indicative of bad faith. However, during the hearing on the issue of bad faith, Worker's attorney contended that the real question of bad faith came down to whether it was reasonable for Employer to contest that Worker had worked full-time. In explaining why she was rejecting Worker's claim of bad faith, the judge noted the extensive hearing held on the issue of whether Worker was a full-time or a part-time employee. The judge further noted the difficult time she had dealing with the issue. "The fact that the WCJ [her]self had serious doubts about the issue is in itself sufficient to reject [Worker's] contention of bad faith...." *Id.* at 617, 798 P.2d at 218. Moreover, given that the judge can decide issues of bad faith based on the evidence presented at the formal hearing, *id.,* we cannot say that it was irrational for the judge to reject Worker's claims of bad faith. *See* § 52–1–54(G) (bad faith is defined as conduct by an employer in the handling of a claim that amounts to fraud, malice, oppression, or willful, wanton, or reckless disregard of worker's rights). *See also Jackson Nat'l Life Ins. Co. v. Receconi,* 113 N.M. 403, 419, 827 P.2d 118, 134 (1992) (insurance bad faith requires a finding of an utter or total lack of foundation for an assertion of non-liability). Accordingly, we affirm the judge's finding of no bad faith.

### C. Twenty–Five Percent Share of Fee Paid by Worker

Worker's contention regarding the 25% share of the fees is predicated primarily on a ruling in her favor on either the bad faith issue of the constitutional issue. In light of our discussion of the bad faith issue raised by Worker, and because we do not address the primary constitutional issue she raises, we also do not address Worker's arguments regarding the 25% requirement found in Section 52–1–54(H).

## II. EMPLOYER'S CROSS–APPEAL

### A. Credit For Overpayment Of Benefits

■ Employer argues that the judge erred in refusing to give it a credit for over-

payment of benefits. Employer bases its claim on the contention that the judge erred in finding that Worker was temporarily totally disabled until December 26, 1991. As Employer recognizes, its claim challenges whether there is substantial evidence to support the judge's finding of temporary total disability. When reviewing such claims, this Court views the evidence in the light most favorable to the judge's decision to determine if, in the record as a whole, there is substantial evidence to support the judge's finding. *See Martinez v. Southwest Landfills, Inc.*, 115 N.M. 181, 185, 848 P.2d 1108, 1112 (Ct. App.1993).

Employer emphasizes the fact that its vocational rehabilitation expert believed Worker had numerous transferable skills that would have enabled her to obtain suitable employment well before December 26, 1991. Employer recognizes that Worker's vocational expert testified that he believed Worker was unable to return to any suitable employment because the skills she had developed were not transferable without vocational training and job placement assistance. However, Employer attempts to undercut Worker's expert testimony by pointing to several reasons why his opinion was either inconsistent or not well informed. Such questions of weight and credibility are for the fact-finder, not this Court, to resolve. *See Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 129, 767 P.2d 363, 368 (Ct.App.), *cert. denied*, 109 N.M. 33, 781 P.2d 305 (1988).

The judge's finding of temporary total disability was also supported by the testimony of Worker herself. *See Grudzina v. New Mexico Youth Diagnostic & Dev. Ctr.*, 104 N.M. 576, 582, 725 P.2d 255, 261 (Ct.App.) (worker's testimony can establish disability), *cert. quashed*, 104 N.M. 460, 722 P.2d 1182 (1986). Worker testified at great length that she believed the loss of function in her hand precluded her from doing the type of work she had done all of her life. She also testified that aside from the actual loss of function, the degree of pain she experienced so debilitated and depressed her that she was unable to work at all. When Worker's testimony is taken together with that of her expert, we conclude there was substantial evidence on the record as a whole to support a finding of temporary total disability. *See Maes v. John C. Cornell, Inc.*, 86 N.M. 393, 397, 524 P.2d 1009, 1013 (Ct.App.1974) (worker may be totally disabled if unable to pursue gainful employment without experiencing pain).

■■■ As a final attack on the judge's finding of temporary disability, Employer suggests that Worker was necessarily precluded from receiving total disability benefits because she obtained a graduate student assistantship in May of 1991. Post-injury employment does not, as a matter of law, preclude a finding of temporary total disability. *See Urioste v. Sideris*, 107 N.M. 733, 737, 764 P.2d 504, 508 (Ct.App.1988); *Amos v. Gilbert W. Corp.*, 103 N.M. 631, 634, 711 P.2d 908, 911 (Ct.App.1985); *Maes*, 86 N.M. at 396, 524 P.2d at 1012. Indeed, Worker testified that although she did work as a graduate assistant during part of 1991, she worked with great pain and was only able to work at a very slow pace because of the unique circumstances of the position. Moreover, the judge may have also properly considered the fact that the assistantship was of limited duration. *See Amos*, 103 N.M. at 634, 711 P.2d at 911 (post-injury employment of a restricted and limited nature does not preclude award of temporary total disability). Under these circumstances, we do not believe Worker's graduate assistantship necessarily precluded the judge from finding that Worker was temporarily totally disabled until she reached maximum medical improvement and was released back to work on December 26, 1991. Thus, we affirm the judge's denial of Employer's request for a credit for overpayment of benefits.

## B. Scheduled Injury

■■■ Employer also challenges the judge's finding that Worker suffered a scheduled injury to her left arm. Instead, Employer argues that the evidence only supports a finding of a scheduled injury to Worker's left hand. We agree.

Worker points out that Dr. Gobeille's deposition was the only medical testimony offered at trial. Dr. Gobeille agreed with a functional capacity assessment done of Worker that

found a 48% impairment to her left hand and a 43% impairment to her left upper extremity. Dr. Gobeille explained that, in his opinion, the purpose that an arm serves is to position a hand in space and give the hand strength to do things. Without a functioning hand Dr. Gobeille was of the opinion that the arm becomes useless, nothing more than a "paperweight." Consequently, the judge found that Worker suffered a scheduled injury to her left arm.

The record does not reveal any evidence to support Dr. Gobeille's opinion that Worker's left arm was useless. Indeed, we believe Dr. Gobeille's testimony was to the effect that Worker's left arm was fully functional but rendered ineffective without a fully functioning hand. Dr. Gobeille's opinion would essentially render meaningless those portions of the scheduled injury section dealing with hand injuries. *See* NMSA 1978, § 52–1–43 (Repl.Pamp.1991). We cannot condone an interpretation of the scheduled injury section that renders part of it meaningless. *Cf. Twin Mountain Rock v. Ramirez,* 117 N.M. 367, 369, 871 P.2d 1373, 1375 (Ct.App.) (refusing to construe Section 52–1–43(A) in such a way as to make Section 52–1–43(B) of limited significance), *cert. denied* 877 P.2d 1105 (1994). Accordingly, we hold that the judge erred in finding a scheduled injury to Worker's left arm instead of her left hand.

### C. Vocational Rehabilitation Benefits

■ Employer contends that the judge erred in awarding Worker vocational rehabilitation benefits. Under NMSA 1978, Section 52–1–50(C) (Repl.Pamp.1991) (effective until January 1, 1991), if a worker is unable to perform the pre-injury job or modified work with the same employer, the worker is entitled to vocational rehabilitation benefits that enable her to perform a job related to her former employment or suitable employment in a non-related field. Under Section 52–1–50(B), a job related to the worker's former employment has priority over suitable employment in a non-related work field.

As we earlier discussed, despite Employer's urging to the contrary, we believe the record supports a finding that Worker could not return to work for Employer to perform either her pre-injury job or modified work. However, the record fails to reflect any showing by Worker that she could not have received vocational rehabilitation to return her to a job related to her former employment. Section 52–1–50(B) imposes upon Worker the burden to make that showing before she would be entitled to vocational rehabilitation benefits to return her to suitable employment in a non-related field, specifically in this case a bachelor's degree in mathematics. *See Jaramillo v. Consolidated Freightways,* 109 N.M. 712, 716, 790 P.2d 509, 513 (Ct.App.), *cert. denied,* 109 N.M. 704, 789 P.2d 1271 (1990). Since Worker failed to make that showing, the judge erred in awarding her the expenses of her college education as vocational rehabilitation benefits.

### D. Vocational Rehabilitation Expert Witness Fee

■ Employer maintains that the judge erred in awarding Worker the fee for her vocational rehabilitation expert witness because the witness did not testify under subpoena. *See* NMSA 1978, § 52–5–7(F) (Repl. Pamp.1991). Worker relies on the last sentence of Section 52–5–7(F) to suggest that it is within the judge's discretion to award an expert witness fee, even if the expert witness did not testify under subpoena.

Under a prior version of the foregoing witness fee provision, the Supreme Court ruled that a judge could award expert witness fees, even if the expert witness testified without a subpoena. *See Quinones v. Santa Fe County,* 107 N.M. 804, 805–06, 765 P.2d 1172, 1173–74 (1988) (construing NMSA 1978, Section 52–1–35(B) (Cum.Supp.1983), the predecessor statute to Section 52–5–7(F)). The *Quinones* Court reasoned that the first two sentences of Section 52–1–35(B) dealt with non-expert witnesses and required a subpoena before the witness fee could be awarded. The *Quinones* Court went on to conclude that the last sentence of Section 52–1–35(B) dealt exclusively with expert witness fees and did not require a subpoena before the judge could award an expert witness fee. The Supreme Court was careful to note that its analysis and holding were not extended to Section 52–5–7(F). *Quinones,* 107 N.M. at 805 n. 1, 765 P.2d at 1173 n. 1.

Although the language in Section 52–5–7(F) is similar to its predecessor, § 52–1–35(B), we find the changes in language significant. Under the prior statutory language of Section 52–1–35(B), the Supreme Court found it significant that provisions relating to expert witness fee awards were set apart in a separate sentence. However, what once were the second and third sentences of Section 52–1–35(B) have now been combined into one sentence in Section 52–5–7(F). While the change is subtle, we believe it indicates a legislative intent to treat all witnesses, both expert and non-expert, alike with regard to the requirement of a subpoena before a witness fee can be awarded. With regard to the language excepting expert witnesses from the fee limitations for non-expert witnesses found in Section 52–5–7(F), we believe that language merely sets forth what can be included within the *amount* of a witness fee award. *Cf. Sedillo v. Levi–Strauss Corp.*, 98 N.M. 52, 56–57, 644 P.2d 1041, 1045–46 (Ct. App.) (describing predecessor, § 52–1–35(B), as imposing a requirement relating to the amount), *cert. denied*, 98 N.M. 336, 648 P.2d 794 (1982). However, the requirement of a subpoena must still be met before any amount can be awarded. Therefore, since the expert witness did not testify under subpoena, the expert witness fee award was error.

*CONCLUSION*

We reverse the judge's compensation order and remand this case so that the judge may amend the compensation order to reflect the correct scheduled injury benefits, vocational rehabilitation benefits, and costs as set forth in this opinion. In light of the change in benefits, the judge shall also recalculate the award of attorney fees to Worker accordingly. Thus, we need not address Worker's constitutional challenge to the attorney fee cap at this time. The denial of bad faith attorney fees to Worker is affirmed.

IT IS SO ORDERED.

APODACA and PICKARD, JJ., concur.