927 P.2d 1057

**Olga JURADO, Worker–Appellee,**

v.

**LEVI STRAUSS & COMPANY, Self–Insured, Employer–Appellant.**

**No. 17074.**

Court of Appeals of New Mexico.

Oct. 9, 1996.

James G. Chakeres, Albuquerque, for Appellee.

Bryan D. Evans, Atwood, Malone, Turner & Sabin, P.A., Roswell, for Appellant.

## OPINION

ALARID, Judge.

1. Employer appeals the order of the Workers' Compensation Judge (WCJ) entered after remand from this Court. The prior opinion in this case reversed the issue of the admissibility of Dr. Fogel's testimony, which had established a whole body impairment rating based on Worker's neck and shoulder condition. *Jurado v. Levi Strauss & Co.*, 120 N.M. 801, 802, 907 P.2d 205, 206 (Ct.App.), *cert. denied,* 120 N.M. 715, 905 P.2d 1119 (1995). After remand, the WCJ considered the testimony of other doctors and awarded permanent partial disability benefits and attorney fees to Worker. The WCJ also ordered Employer's attorney to file a pleading with the Workers' Compensation Administration (WCA) stating the hours expended on this case and the amount charged. Employer appealed.

2. We reverse the award of permanent partial disability benefits and reverse and remand the award of Worker's attorney fees for reconsideration. We affirm the portion of the order requiring Employer's attorney to file a pleading evidencing Employer's attorney fees.

3. Before reaching the merits of the case, we must first address whether the order appealed from is a final, appealable order. *See, e.g., Britt v. Phoenix Indem. Ins. Co.,* 120 N.M. 813, 815, 907 P.2d 994, 996 (1995). The parties had been asked to brief the issue of finality, raised in Worker's motion to dismiss the appeal. Although Worker abandons this issue, we note this Court's jurisdiction over the appeal. *See id.* (question of finality was jurisdictional and would be raised by the Court sua sponte).

4. The order appealed from grants the parties leave to petition the WCJ for Worker to undergo an independent medical examination (IME) to determine any physical impairment to Worker's neck and shoulder. The order, however, disposes of all controversies pending before the WCJ. *See Corn v. New Mexico Educators Fed. Credit Union,* 119 N.M. 199, 202, 889 P.2d 234, 237 (Ct.App.1994), *cert. denied,* 119 N.M. 168, 889 P.2d 203 (1995). The order is final for purposes of appeal.

5. We next consider whether there is substantial evidence to support the award of permanent partial disability benefits rather than scheduled injury benefits. The opinion in the prior appeal stated, "For Worker to receive permanent partial disability benefits under [NMSA 1978,] Section 52–1–42 [Repl. Pamp.1991], rather than scheduled injury benefits under [NMSA 1978] Section 52–1–43 [Repl.Pamp.1991], Worker must show that (1) she is totally disabled or (2) she has suffered a separate and distinct impairment to a nonscheduled body part." *Jurado,* 120 N.M. at 804, 907 P.2d at 208. Later in the opinion this Court reiterated, "Worker had the burden of establishing a separate and distinct impairment to a nonscheduled body part through compliance with the Act." *Id.* at 806, 907 P.2d at 210; *see also Gomez v. Bernalillo County Clerk's Office,* 118 N.M. 449, 453–54, 882 P.2d 40, 44–45 (Ct.App.1994) (where the worker establishes separate impairment to other body part or where total disability results, scheduled injury section is inapplicable).

6. NMSA 1978, Section 52–1–26(B) (Repl. Pamp.1991) (effective Jan. 1, 1991) defines permanent partial disability as "a condition whereby a worker, by reason of injury arising out of and in the course of employment, suffers a permanent impairment." The legislature defined impairment as "an anatomical or functional abnormality existing after the date of maximum medical improvement as determined by a medically or scientifically demonstrable finding and based upon the most recent edition of the American medical association's guide to the evaluation of permanent impairment." NMSA 1978, § 52–1–

24(A) (Repl.Pamp.1991) (effective Jan. 1, 1991).

7. The WCJ entered findings adopting the medical opinion of Dr. Jakins to establish that Worker is suffering a whole body impairment and disability. The WCJ also found that Dr. Allegretto's impairment rating of 6% to the whole person established a whole body disability. The WCJ took judicial notice of the American Medical Association (AMA) guidelines and calculated permanent partial disability based on a 6% whole body impairment rating. The WCJ seemed to recognize, however, that there was no evidence of an impairment rating to the neck or shoulders since it expressly allowed the parties to petition for an IME to establish an impairment rating, if any, for Worker's neck and shoulder condition.

8. Neither Dr. Jakins' nor Dr. Allegretto's testimony established an impairment rating for any nonscheduled member. Dr. Jakins testified in his deposition, "I didn't do any impairment ratings on this lady at all." Dr. Allegretto's letters calculating the impairment rating also fail to establish an impairment rating for any nonscheduled member.

9. In his first letter, Dr. Allegretto states that an impairment rating cannot be assigned to the neck complaints and trigger points, and that he cannot provide an impairment rating for the headaches because that is not his area of expertise. The whole body impairment rating of 15% calculated in this first letter was revised in the second letter to a 6% impairment rating for the whole person based on the neuralgic pain in Worker's bilateral thumbs. He also states that it is unlikely that Worker will be able to return to her job and "will probably require partial permanent disability based on the impairment rating available." Despite the legally conclusive language that Worker should be entitled to permanent partial disability benefits, Dr. Allegretto's impairment rating was based on injuries to scheduled members. Based on this evidence, Worker is limited to benefits from the scheduled injury section.

10. Although there is evidence of a separate and distinct injury in the nature of

disabling pain to nonscheduled members, Worker was required to establish an impairment rating for the nonscheduled members. *See Jurado,* 120 N.M. at 806, 907 P.2d at 210. The only impairment rating, stated by Dr. Allegretto, is based on the neuralgic pain in Worker's bilateral thumbs, which Dr. Allegretto extrapolated into a percentage of whole body impairment.

■ 11. Despite evidence that Worker suffered an injury to a nonscheduled member in the form of disabling pain to her neck, there is no evidence establishing an impairment for the neck or shoulder condition under the AMA guidelines. Since there is no evidence of impairment to a nonscheduled member, there is no evidence to support the award of permanent partial disability. *Cf. Peterson v. Northern Home Care,* 121 N.M. 439, 442, 912 P.2d 831, 834 (Ct.App.1996) (permanent partial disability based on secondary mental impairments did not require a numerical rating since the AMA discourages, if not prohibits, percentage ratings for mental impairments; definition of secondary mental impairment is a mental illness triggered by a physical impairment).

12. We reverse and remand for the entry of an award of scheduled injury benefits based on the admissible evidence presented to the WCJ. We emphasize, however, that nothing in this opinion precludes Worker from obtaining an IME to establish an impairment rating for her neck and shoulder condition as provided in the WCJ's order.

Because we reverse the award of benefits, we also reverse and remand for a reconsideration of the award of attorney fees. *See, e.g., Murphy v. Duke City Pizza, Inc.,* 118 N.M. 346, 352, 881 P.2d 706, 712 (Ct.App.), *cert. denied,* 118 N.M. 430, 882 P.2d 21 (1994); *see also Cordova v. Taos Ski Valley, Inc.,* 121 N.M. 258, 264, 910 P.2d 334, 340 (Ct.App. 1995) (calculation of attorney fees in workers' compensation cases must consider applicable statutes and other factors which are individual to each case, causing fees to be of necessity individual).

13. Employer also challenges the portion of the order requiring Employer's attorney to file a pleading evidencing Employer's attorney fees. In its argument, Employer relies on NMSA 1978, Section 52–1–54(I) (Cum. Supp.1996), which limits the amount of attorney fees payable, and on New Mexico Workers' Compensation Administration Rule 92.3.24(E) (Oct.1993), which provides for the employer's attorney to certify that the total attorney fees incurred in defense of the claim does not exceed $12,500.

14. Employer in this case filed a certificate pursuant to WCA Rule 92.3.24(E). Employer argues that, because there is no express provision stating the WCJ may require more specific information from an employer's attorney, the WCJ has no authority to enter such an order. Worker argues, by analogy to administrative law cases, that the WCJ's power is not limited to what is expressly authorized by statute, but includes those powers that may be fairly implied from the statutes. *See generally AA Oilfield Serv., Inc. v. New Mexico State Corp. Comm'n,* 118 N.M. 273, 277, 881 P.2d 18, 22 (1994).

■ 15. The legislative policy codified in NMSA 1978, Section 52–1–54 (Cum.Supp. 1996), is to discourage excessive litigation of compensation claims. *See generally Corn,* 119 N.M. at 211, 889 P.2d at 246 (Apodaca, J., specially concurring). We note that in awarding Worker attorney fees, the WCJ entered a finding that the issues in this case were contested to a more than average degree.

■ 16. We determine that a WCJ has implicit authority under Section 52–1–54(I) to require an employer's counsel to file a pleading stating the number of hours expended on a case and the amount charged as legal fees as a means of facilitating the legislative policy behind Section 52–1–54. The fact that the rules adopted by the WCA provide one method of verifying the amount of fees does not preclude the WCJ from employing other methods reasonably calculated to achieve the same end. The WCJ's order in this case did not exceed the WCJ's authority.

17. We affirm the portion of the order requiring Employer's counsel to evidence the

amount of time expended and the amount of fees charged in this case. We reverse the award of permanent partial disability benefits, and reverse and remand for reconsideration the award of attorney fees to Worker. Pursuant to the WCJ's order, however, Worker may petition the WCJ to undergo an IME to determine any physical impairment to Worker's neck and shoulder conditions and seek a modification of benefits under NMSA 1978, Section 52-1-56 (Repl. Pamp.1991).

18. **IT IS SO ORDERED.**

APODACA, C.J., and BOSSON, J., concur.