James V. McINNIS, Jr.

v.

**TOWN OF BAR HARBOR and/or Commercial Union Assurance Companies.**

Supreme Judicial Court of Maine.

June 2, 1978.

McTeague, Higbee & Tierney by Patrick N. McTeague (orally), Maurice A. Libner, Brunswick, for plaintiff.

Rudman, Rudman & Carter by John M. Wallach (orally), Bangor, for defendants.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

Petitioner James V. McInnis, Jr., appeals the Industrial Accident Commission's dismissal of his petition for award of vocational rehabilitation.

We sustain his appeal and remand to the commission for further proceedings.

In November 1975 petitioner, who was employed by the Town of Bar Harbor as a school janitor and bus driver, sustained a compensable injury to his back. The parties entered into an agreement for compensation, subsequently approved, under which McInnis received weekly compensation payments for total incapacity. Pursuant to 39 M.R.S.A. § 94 (Supp.1973), McInnis later petitioned for an award of vocational rehabilitation. The particular rehabilitation he requested consisted of a two-year program for an Associate Degree in Business Administration at Husson College at an estimated cost to his employer of $7,268. Shortly after McInnis filed that petition, the Town of Bar Harbor petitioned for review of incapacity. After hearing on both petitions, the commission concluded on the employer's petition for review that

"Mr. McInnis has capacity for gainful work although his physical capacity is substantially less than what it was before

he was hurt in November 1975. We estimate his present capacity for work to be 50% of what it was in November 1975, and compensation for partial disability at the rate of $45.50 a week subject to adjustment is required by Section 55 of the Act."

In a separate decree, however, the Commission dismissed the employee's petition for vocational rehabilitation on the ground that "it appears clear to us from the evidence that Mr. McInnis has the capacity for substantial gainful employment, and, although he may not be physically able to perform all that he could before his injury, we conclude that the educational program he is pursuing is not necessary to restore him to gainful employment."

On a seasonable appeal, petitioner McInnis obtained the requisite pro forma decrees from Superior Court and then appealed to this court.[1]

## I. *Petition for Award of Vocational Rehabilitation*

In *Lancaster v. Cooper Industries,* Me., 387 A.2d 5 (May 28, 1978), decided last month, this court for the first time had occasion to construe the vocational rehabilitation provisions of the workmen's compensation law. The injured employee seeking vocational rehabilitation in that case was drawing workmen's compensation for total incapacity. The case now at bar and its companion, *Aldrich v. Cianbro Corp.,*[2] involve, however, employee-petitioners who have been found to be entitled to workmen's compensation for only partial incapacity. This circumstance requires us to address additional threshold questions of the eligibility of the partially incapacitated for vocational rehabilitation.

First, contrary to the apparent argument of the employer and insurer, any and all injured employees who retain *some*

---

1. The employee filed a notice of appeal from the Superior Court's pro forma decree entered at his behest on appeal from the commission's finding of 50% partial incapacity on the employer's petition for review. He did not, however, brief or argue the merits of that decision,

and we consider that he has abandoned that appeal.

2. Also argued before this court on May 3, 1978, and decided today by a separate opinion in Me., 387 A.2d 744 (6/2/78).

work capacity are *not* thereby barred from being awarded vocational rehabilitation. At the time of McInnis' injury and petition, the controlling section 52 of the workmen's compensation law in pertinent part provided, in identical language as when first enacted in 1961,[3] as follows:

"*Whenever,* because of the nature of such injury or the subsequent condition of the employee following such injury, *it appears that vocational rehabilitation is necessary and desirable to restore the injured employee to gainful employment, the employee shall be entitled to reasonable and proper rehabilitation service* for a period not exceeding 52 weeks, which period may be extended for a further period not to exceed another 52 weeks if such extended period is found to be necessary and proper by any member of the commission." (Emphasis added) [4]

If one were to read that provision in isolation, he might well conclude that any injured employee who retained *some* work capacity is capable of *some* "gainful employment" and therefore could not prove vocational rehabilitation to be "necessary . . . to restore [him] to gainful employment." Such a restrictive reading is, however, categorically foreclosed by examining sections 54 and 55 of the Act. That vocational rehabilitation is not restricted to the totally incapacitated is evident from the history of section 55 governing the rate of compensation for partial incapacity. When the legislature in 1961 first enacted all the vocational rehabilitation provisions of the Act, it amended the provision pertaining to compensation for partial incapacity to include the following emphasized language:

"While the incapacity for work resulting from the injury is partial, the employer shall pay the injured employee a weekly compensation equal to ⅔ the difference, due to said injury, between his average weekly wages, earnings or salary before the accident and the weekly wages, earnings or salary which he is able to earn thereafter, but not more than $39 a week; and in no case shall the period covered by such compensation be greater than 300 weeks from the date of the accident *except for vocational rehabilitation services provided under sections 9 and 11* [the counterparts of present sections 52 and 54]." (Emphasis added) P.L. 1961, ch. 384, § 4 (eff. Nov. 30, 1961).

The reference in section 55 to vocational rehabilitation was later deleted when the legislature amended the statute to make compensation for permanent partial incapacity coextensive with the duration of disability, see P.L. 1973, ch. 531 (eff. Nov. 30, 1973), thereby eliminating the need to make special exception for "vocational rehabilitation services" in section 55.

In addition, section 54 states that:

"*Whenever a program of vocational rehabilitation has been inaugurated,* either by approved agreement or commission decree, *the employer shall pay* the injured employee, *in addition to compensation, if he is totally or partially incapacitated,* a sum not to exceed $35 per week for sustenance and travel as may be determined by the commission during the period of such rehabilitation within the limitations as prescribed in this section and section 52." (Emphasis added) [5]

The reference in section 54 to "partially incapacitated" employees, following as it

---

**3.** *See* P.L. 1961, ch. 384 (eff. Nov. 30, 1961).

**4.** The proceedings below took place prior to the effective date of P.L. 1977, ch. 278, by which the legislature amended sections 52 and 54 of the Act by inserting the phrase "or educational" after the word "vocational" wherever the latter appeared therein. The 1977 statute expressly defined "educational rehabilitation" to include "post-secondary, college and university instruction." We view those amendments as merely clarifying the legislature's intent that "vocational" be given a broad meaning and not

as extending an additional and different right to the employee. Those amendments are not, therefore, of any consequence to petitioner's entitlement to rehabilitation in the form of a college program, providing that he is otherwise able to show his entitlement to a rehabilitation award under section 52.

**5.** As we have pointed out in n. 4 above, section 54 was amended in 1977 by inserting the phrase "or educational" after "vocational." P.L. 1977, ch. 278, § 3.

does the phrase "whenever a program of vocational rehabilitation has been inaugurated," would be meaningless unless a partially incapacitated employee could qualify in the first instance for such rehabilitation.

■ Having concluded that retention of partial work capacity does not automatically disqualify the injured employee for rehabilitation, we are still left with the question of what, if any, showing the partially incapacitated must make beyond what would be required of the totally incapacitated. The petitioner who by agreement or commission award is receiving total compensation is thereby found to retain no capacity for gainful employment, and no further showing is required of him that rehabilitation is "necessary . . . to restore [him] to gainful employment." *Lancaster v. Cooper Industries, supra* at 8. The situation is not so simple, however, when the injured employee falls into the broad class of "partially incapacitated." Those subject to partial incapacity vary widely in the extent that they can still obtain and hold gainful employment. We do not perceive in section 52 or in the related section 54 any legislative intent to treat all partially incapacitated the same, regardless of degree of their work impairment. As distinguished from the totally incapacitated, the partially incapacitated employee cannot rely upon the mere fact of his partial work incapacity to meet the "necessary" test for vocational rehabilitation.

The controlling language of section 52, from which alone flows any right to vocational rehabilitation, requires the requested program to have as its "necessary"[6] objective "to restore the injured employee to gainful employment." The statutory language is *not* "to restore the injured employee to his former level of gainful employment." Nor is it "to improve the injured employee's capacity for gainful employment."[7] The section 52 language is inappropriate indeed if the legislature had intended such broad availability of vocational rehabilitation to any partially incapacitated employee.

■ We conclude that the restrictive language of section 52 can be accommodated to the broadening implications of the collateral language of section 54 only as follows: To qualify at the threshold for the vocational rehabilitation benefits of section 52, the petitioner needs to show that his incapacity, though less than total, puts him at such a disadvantage in employability, compensation, and job security (recognizing that the disabled all too often are "the last hired and the first fired") that the legislature would

---

**6.** Petitioner relies heavily upon the construction of the word "necessary" in the comparable Minnesota statute by that state's highest court. *See, e. g., Norby v. Arctic Enterprises, Inc.,* 305 Minn. 519, 232 N.W.2d 773, 775 (1975), where that court applied its holding in earlier decisions that " 'necessary' [in Minn.Stat. 1974, § 176.101(8)] should not be construed as 'indispensable,' but that retraining compensation should be found necessary if it appears that the retraining will materially assist the employee in restoring his impaired capacity to earn a livelihood." Significantly, however, the stated objective for which retraining must be found "necessary" under the Minnesota statute is "to significantly reduce or prevent the decrease in employability resulting from the injury." That objective is clearly distinguishable from that of our own section 52, which requires vocational rehabilitation to be "necessary . . . *to restore the injured employee to gainful employment.*" (Emphasis added)

**7.** Those states that provide in their workmen's compensation law for vocational rehabilitation or "retraining" have widely varying approaches to the subject, making it generally unfruitful in this area to engage in any extended discussion of the law of other jurisdictions. *Cf., e. g.,* N.H.Rev.Stat.Ann. § 281:21b(I) (Supp. 1975), following *Council of State Governments, Workmen's Compensation and Rehabilitation Law, Draft* § 12(c) (1963), which provides: "When as a result of [his] injury, [an employee] is unable to perform work for which he has previous training or experience, he shall be entitled to such vocational rehabilitation services, including retraining and job placement, as may be reasonably necessary to restore him to suitable employment." *Cf. also,* Conn.Gen. Stat. § 31–283a (1973), which establishes a division of workmen's rehabilitation funded by insurers and employers "which shall provide rehabilitation programs for employees suffering compensable injuries . . . *which injuries disabled them from performing their customary or most recent work.*" (Emphasis added)

see fit to treat him for purposes of those benefits the same as the totally incapacitated. His incapacity must be a significant impediment to gainful employment, approaching that incident upon total incapacity.

We are fully conscious of the great value of vocational rehabilitation, like any and all education and training, to the well-being of the employee and the social and economic health of the community. *See generally,* 2 A. Larson, *Law of Workmen's Compensation* § 61.20 (1976). However, section 52 rehabilitation is not a publicly funded program for retraining the handicapped. Compare 22 M.R.S.A. § 3051 *et seq.* (Supp.1975). Rather, it is entirely paid for by the employer and was first added to the Maine workmen's compensation law 46 years after that law was originally enacted by P.L. 1915, ch. 295. This court would be engaging in judicial legislation if it ignored the restricting consequences of the particular language—"necessary and desirable to restore the injured employee to gainful employment"—selected by the 1961 legislature to define the requisite purpose of the new program, the cost of which was being newly imposed upon the employer. If the legislature decides, after hearing policy arguments similar to those advanced here by counsel for the employee, to broaden the availability of employer-funded vocational rehabilitation for the partially incapacitated, it can readily select language that aptly accomplishes that purpose.

We find it difficult to be certain that the commission in its cryptic decree denying the petition for vocational rehabilitation applied the correct legal principles as here elucidated. Having determined that the injured employee retained 50% work capacity, which the commission characterized as "capacity for substantial gainful employment," it declared that the requested educational program was "not necessary to restore him to gainful employment." From all that appears in the commission's findings, it may have thought that it was required to reach that result as a matter of law because of the language of section 52.

If so, it acted under an erroneous view of the law. Each case in which a partially incapacitated employee seeks vocational rehabilitation under the Act must be examined upon its facts to determine whether the employee can show special circumstances, such as job insecurity, that would be adequate to qualify him for vocational rehabilitation. Here we must remand for that express determination. Furthermore, since in *Lancaster* and this decision this court has for the first time discussed the applicable legal principles, we conclude that we should in fairness to all concerned permit further hearings before the commission and require expanded findings in keeping with those principles.

## II. *Extent of Compensation to be Paid During Vocational Rehabilitation*

Petitioner's other contention on appeal is not before us for decision. He argues that a partially incapacitated employee is entitled under section 54 to compensation for *total* incapacity during any period of vocational rehabilitation awarded to him by the commission. At this point, however, petitioner has been denied any vocational rehabilitation, and accordingly, consideration of what percentage compensation he would be paid during such a program is both premature and academic. Furthermore, from anything we can find in this record, the petitioner is raising this contention for the first time on appeal. Thus, he has disregarded the elementary principle of appellate procedure by which the Law Court will not consider claims not asserted below. *See, e. g., Reville v. Reville,* Me., 289 A.2d 695 (1972). The reason behind this well-established rule has particular force in the circumstances of this case. This court is here called upon to construe for the first time the statutory pattern for vocational rehabilitation for partially incapacitated employees in workmen's compensation cases, and in doing so we can well benefit from an initial consideration and decision of all legal questions by the administrative agency to whose expertise the legislature has committed the effectuation of the purposes of the Act. *Cf., e. g., State ex rel.*

*Brennan v. R. D. Realty Corp.*, Me., 349 A.2d 201, 207–08 (1975).

The entry must be:

Appeal sustained.

Judgment of the Superior Court vacated.

Remanded to the Industrial Accident Commission for further proceedings consistent with this opinion.

Further ordered that the employer pay to the employee an allowance for counsel fees in the amount of $550, together with his reasonable out-of-pocket expenses for this appeal.

POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ., concur.