790 P.2d 509

**Eddy JARAMILLO, Plaintiff–Appellant,**

v.

**CONSOLIDATED FREIGHTWAYS,**
**Defendant–Appellee.**

No. 11344.

Court of Appeals of New Mexico.

Jan. 25, 1990.

Certiorari Denied March 27, 1990.

Benito Sanchez, Benito Sanchez, P.A., Albuquerque, for plaintiff-appellant.

Charles E. Stuckey, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for defendant-appellee.

## OPINION

DONNELLY, Judge.

Plaintiff appeals from the trial court's denial of his motion to increase a prior award of workers' compensation benefits and for an award of vocational rehabilitation benefits. We discuss (1) whether the trial court erred in determining that there had been no increase in plaintiff's disability; and (2) whether the court erred in denying plaintiff's request for the award of vocational rehabilitation benefits. We affirm in part and reverse in part.

This is the third appeal since the filing of plaintiff's original workers' compensation action. On remand following the first appeal, the trial court entered judgment in 1986 determining that plaintiff suffered a work-related accident on January 22, 1983 but that no immediate disability resulted from the accident; that in March 1983, plaintiff aggravated his prior injury; and that "[p]laintiff became 60% disabled on January 1, 1984, and this disability was caused by the ... March 1983 incident."

The 1986 judgment entered by the court provided that plaintiff was "100% unable to return to his former employment, i.e., truck driver, and 60% disabled from performing other work and duties commensurate with his age, level of education, background and work experience." The court ordered that plaintiff be awarded "60% permanent partial disability for injuries sustained [to] his low back," together with payment of reasonable medical expenses and attorney fees.

Both plaintiff and defendant appealed from the judgment on the mandate. On February 26, 1987, this court affirmed the

trial court's judgment determining the amount of plaintiff's disability.

In June 1985, plaintiff underwent a laminectomy and fusion of his lower back. Subsequent to the 1985 trial, plaintiff began complaining of pain in his left hip. A medical examination revealed that plaintiff was suffering from septic necrosis, a deterioration of his hip joint caused by medication prescribed in the treatment of his back condition. The examination indicated that the degeneration was most prevalent in plaintiff's left hip. Thereafter, plaintiff underwent a total left hip replacement in February 1986.

In February 1988, plaintiff filed a motion to increase his workers' compensation benefits, alleging that his disability had increased since the entry of the prior judgment for workers' compensation benefits.

### I. CLAIM OF INCREASE IN DISABILITY

Plaintiff asserts that the trial court erred in denying his motion to increase the amount of his disability. Plaintiff argues that subsequent to his previous workers' compensation trial wherein the trial court determined that he had suffered a 60% permanent partial disability, his physical condition has deteriorated so that he is currently permanently totally disabled.

■ Plaintiff's claim for modification and increase in his workers' compensation disability award is governed by the law in effect on the date of his accidental injury resulting in his disability. Thus, the 1983 law is controlling since plaintiff's original accident occurred in 1983. *See Varos v. Union Oil Co. of California*, 101 N.M. 713, 688 P.2d 31 (Ct.App.1984).

■ Under NMSA 1978, Section 52–1–56 (Orig.Pamp.), a worker may petition the court to modify or increase the amount of compensation payable to him based upon a showing that his disability "has become more aggravated or has increased without the fault of the workman." *See also Di-Matteo v. County of Dona Ana*, 109 N.M. 374, 785 P.2d 285 (Ct.App.1989); *Holliday v. Talk of the Town, Inc.*, 98 N.M. 354, 648

P.2d 812 (Ct.App.1982). A worker has a right to reopen his claim when there is a showing that his disability has increased and that the increase in disability is causally related to his initial compensable injury. *Rumpf v. Rainbo Baking Co.*, 96 N.M. 1, 626 P.2d 1303 (Ct.App.1981); *Glover v. Sherman Power Tongs*, 94 N.M. 587, 613 P.2d 729 (Ct.App.1980). An increase in physical impairment, however, will not automatically result in an increase in the worker's disability. *Tafoya v. Leonard Tire Co.*, 94 N.M. 716, 616 P.2d 429 (Ct. App.1980). *See also Goolsby v. Pucci Distrib. Co.*, 80 N.M. 59, 451 P.2d 308 (Ct.App. 1969); *Gallegos v. Kennedy*, 79 N.M. 590, 446 P.2d 642 (1968).

■ Because plaintiff previously obtained an award of permanent partial disability, it was his burden to show facts indicating that his physical condition had changed and that there had been an increase in his disability since the original award in 1985. *E.g., Amos v. Gilbert W. Corp.*, 103 N.M. 631, 711 P.2d 908 (Ct.App. 1985). Since the trial court found that the medical treatment rendered to plaintiff for his original back problems caused plaintiff's deteriorating hip conditions, the critical question thus becomes whether the aggravation of plaintiff's original disability has resulted in any diminishment of his ability to perform to some percentage extent the usual tasks in the work he was performing at the time of his injury, and whether plaintiff is unable to some percentage extent to perform work for which he is fitted by age, education, training, general physical and mental capacity, and previous work experience. *See* NMSA 1978, §§ 52–1–25, –26, –56 (Orig.Pamp.); *see also Perez v. International Minerals & Chem. Corp.*, 95 N.M. 628, 624 P.2d 1025 (Ct.App.1981).

In the present case plaintiff presented evidence that he remained 100% unable to perform his former work as a long-distance truck driver, that he could not perform certain functions as a laborer, that he was significantly limited in his ability to lift, bend, and walk any extended distances, and that his range of motion was restricted. It was uncontradicted that degeneration in

plaintiff's right hip was progressive and may ultimately require an operation to replace his right hip.

Defendant argues that, although plaintiff's physical condition has changed, other evidence in the record supports the trial court's findings determining that his disability has not changed. Defendant contends that the evidence concerning whether plaintiff has suffered any increase in the percentage of disability is conflicting; that, among other evidence, Dr. Richard White, an orthopedic surgeon, testified that plaintiff's hip replacement achieved an excellent result and that there has been no change in the restrictions placed on plaintiff at the original trial; that Dr. Garry L. Singer also testified that there has been no change in plaintiff's ability to return to work and that although he is unable to work as a long-distance truck driver, he is nevertheless able to perform light, sedentary work.

On appeal where a challenge is raised concerning the sufficiency of the evidence to support the findings adopted by the trial court, our scope of review is limited to determining whether there is substantial evidence to support the trial court's findings. *Lyon v. Catron County Comm'rs,* 81 N.M. 120, 464 P.2d 410 (Ct.App.1969). In conducting this review, all disputed issues of fact are resolved in favor of the successful party, together with all reasonable inferences arising therefrom. *Lopez v. Smith's Management Corp.,* 106 N.M. 416, 744 P.2d 544 (Ct.App.1986). In evaluating the sufficiency of the evidence on appeal, the question is not whether there is evidence to support an alternative result, but whether the trial court's result is supported by substantial evidence. *Bagwell v. Shady Grove Truck Stop,* 104 N.M. 14, 715 P.2d 462 (Ct.App.1986). This court will not reweigh the evidence even though evidence is presented which may have supported a different result. *Id.*

Applying the above rules to the record before us, we cannot say that the record does not support the findings of the trial court determining that although there has been a change in some of the physical functions which the plaintiff has been able

to perform since the prior trial in this case, there has been no change in the plaintiff's percent of disability. Therefore, we hold that substantial evidence supports the trial court's findings of no increase in disability.

In analyzing plaintiff's contention that he is totally permanently disabled, however, we note what appears to be an inadvertent discrepancy in the findings of fact and conclusions of law entered by the trial court, which is carried forward in the judgment of the trial court. The judgment entered by the trial court on May 13, 1987, awarded benefits based on its finding that plaintiff was 60% *permanently* partially disabled due to injuries sustained to his low back. Following the hearing on plaintiff's motion to increase his disability benefits, the trial court adopted both a finding of fact and conclusion of law determining that although plaintiff had "a change in some of the physical functions" which he is able to perform since his former trial in this case, "there has been no change in the [p]laintiff's percent of disability," and that "[p]laintiff is presently, and has been since the time of this trial, 60% *temporarily* partially disabled, except for the period of convalescence following hip replacement, February 6, 1986 to May 20, 1986, in which [p]laintiff was 100% disabled." (Emphasis added.) On appeal, both plaintiff and defendant agree that the reference to "temporarily" rather than "permanently" was inadvertent.

We affirm the trial court's denial of increase in disability and remand for correction of the trial court's findings of fact, conclusions of law and judgment concerning the permanency of plaintiff's disability.

## II. VOCATIONAL REHABILITATION BENEFITS

Next, plaintiff argues that the trial court erred in denying his request for vocational rehabilitation services and that such award is mandatory when the evidence establishes that he is permanently disabled and unable to return to his former employment.

■ Plaintiff's claim for vocational rehabilitation benefits is governed by the law in effect at the time he suffered his original

work-related accident in 1983. *See Varos v. Union Oil Co. of California;* NMSA 1978, Section 52–1–50 (Cum.Supp.1983), provides in pertinent part:

In addition to the medical and hospital services provided in Section 52–1–49 NMSA 1978, *the employee shall be entitled to such vocational rehabilitation services, including retraining or job placement, as may be necessary to restore him to suitable employment where he is unable to return to his former job.* The court shall determine whether a disabled employee needs vocational rehabilitation services and shall cooperate with, and refer promptly all cases in need of such services to, the appropriate public or private agencies ... for such services.... The refusal of the employee to avail himself for rehabilitation ... shall not result in any forfeiture or diminution of any award made pursuant to the Workmen's Compensation Act.... [Emphasis added.]

■ Under Section 52–1–50, the burden of proof to establish a need for an award of vocational rehabilitation benefits is upon the worker; a worker is not automatically entitled to such benefits. *See Lopez v. Smith's Management Corp.; Sanchez v. Homestake Mining Co.,* 102 N.M. 473, 697 P.2d 156 (Ct.App.1985); *Garcia v. Albuquerque Pub. Schools,* 99 N.M. 741, 663 P.2d 1198 (Ct.App.1983).

■ Proof of need for vocational rehabilitation services requires evidence that (1) as a result of a compensable injury, the worker is unable to return to his or her former employment, or is permanently unable to some percentage extent to perform work for which he or she has previous training or experience; and (2) that the worker is a proper candidate for and in need of vocational rehabilitation. *See Sanchez v. Homestake Mining Co.; Nichols v. Teledyne Economic Dev. Co.,* 103 N.M. 393, 707 P.2d 1203 (Ct.App.1985); *see also Garcia v. Albuquerque Pub. Schools.* To qualify for vocational rehabilitation benefits a worker must show that there is a likelihood that such rehabilitation will enable him to return to suitable employment. *Id.* Where the evidence is undisputed that

an injured worker meets the two-pronged test required under Section 52–1–50, his right to vocational rehabilitation benefits is mandatory. *See Lopez v. Smith's Management Corp.; Sanchez v. Homestake Mining Co.*

■ The trial court found that plaintiff currently is totally disabled from returning to his former employment as a truck driver, and defendant concedes the correctness of that finding. Therefore, our focus is on the second element of whether plaintiff is a proper candidate for and in need of vocational rehabilitation.

Vocational rehabilitation benefits are intended to assist a worker who is unable to return to his former employment to be restored, in whole or in part, to suitable gainful employment. *Garcia v. Schneider, Inc.,* 105 N.M. 234, 731 P.2d 377 (Ct.App. 1986). As observed in *Garcia,* where a worker has reached maximum medical improvement, a determination of the extent of his disability may not be properly capable of assessment, other than in obvious cases, until the injured worker who is unable to return to his or her former job has been afforded the benefit of vocational rehabilitation services.

In the present case the evidence was undisputed that at the time of the hearing on plaintiff's motion for increase of his disability, he had a permanent back disability which has limited his ability to lift and his range of movement; that he had undergone a replacement of his left hip, resulting in additional limitations on his ability to lift and range of movement; that he continues to suffer from necrosis of his right hip, which may require a second hip replacement operation for that hip in the future; that he has a shortened left leg; and that at the time of the hearing he was fifty-seven years of age, had a seventh grade education, and since leaving school he worked primarily as a laborer and as a truck driver. The court adopted findings determining that plaintiff was 100% unable to return to his former work as a truck driver, and that he was partially permanently disabled.

Defendant did not offer any evidence to refute plaintiff's showing that he was in

need of vocational rehabilitation services. Theresa Guerin, a physical therapist, recommended that plaintiff be referred to a rehabilitation specialist for an evaluation of his job skills in order to evaluate him properly for retraining. William G. Krieger, a vocational rehabilitation expert, testified that plaintiff was in need of significant and comprehensive vocational rehabilitation services. Dr. Krieger further testified that plaintiff's chances of obtaining further employment, even with the benefit of a rehabilitation program, were guarded. Although Dr. Krieger did indicate a low probability of success in employment after vocational rehabilitation, we do not read that testimony as necessarily negating Dr. Krieger's opinion as to the need of significant and comprehensive professional rehabilitation services. As we stated in *Garcia,* "a determination of disability cannot be properly assessed, except in the obvious cases, until the injured worker, unable to return to his or her former job, has been afforded the benefit of vocational rehabilitation." *Id.* at 237–38, 731 P.2d at 380–81.

■ In view of the court's finding that plaintiff could not return to his former job as a truck driver and unrefuted evidence that plaintiff was in need of vocational rehabilitation assistance, it was error to deny such award. *See Lopez v. Smith's Management Corp.; Sanchez v. Homestake Mining Co.; Trujillo v. Beaty Elec. Co.* 91 N.M. 533, 577 P.2d 431 (Ct.App. 1978). The fact that an injured worker retains some capacity to perform some type of work does not bar the worker from an award of vocational rehabilitation. *See McInnis v. Town of Bar Harbor,* 387 A.2d 739 (Me.1978).

■ When a worker is determined to be a proper candidate for vocational rehabilitation and in need of such benefits the court should direct that the worker be evaluated in order to determine the appropriate type of vocational rehabilitation which will assist the worker in being restored to suitable employment. Under Section 52–1–50, the term "restore ... to suitable employment" means to return the worker to employment similar in remuneration to that earned prior to the worker's disability and which is compatible with the worker's age, education, training, general physical and mental capacity, and previous work experience. *See also Nichols v. Teledyne Economic Dev. Co.; Smith v. Hastings Irrigation Pipe Co.,* 222 Neb. 663, 386 N.W.2d 9 (1986). Under Section 52–1–50, a worker who is determined to be eligible to receive vocational rehabilitation benefits may also be awarded, where appropriate, such "board, lodging, travel and other expenses and [assistance] for the maintenance of his family during the period of rehabilitation," not to exceed the statutory amount. *See also Aranda v. D.A. & S. Oil Well Servicing, Inc.,* 98 N.M. 217, 647 P.2d 419 (Ct.App.1982).

■ In the absence of legislative guidelines for implementation of vocational rehabilitation, the judge should devise and monitor a suitable vocational rehabilitation plan. *See Ex Parte Beaver Valley Corp.,* 477 So.2d 408 (Ala.1985). In determining the form of vocational rehabilitation which is most likely to restore the injured worker to suitable employment, the plan must be reasonably calculated to restore the worker to suitable employment providing income comparable to that earned prior to his disability. *Id.* As observed in *Ex Parte Beaver Valley Corp.,* "[i]n making its determination, the trial court should also consider the type of work done by the employee at the time of the injury, his vocational aptitude, his physical and mental abilities, and such other factors as the court may deem relevant." *Id.* at 412.

We affirm the trial court's findings denying an increase in disability. The court erred in denying plaintiff's motion for vocational rehabilitation services. The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion. Plaintiff is awarded $1,200 for the services of his attorney incident to this appeal.

IT IS SO ORDERED.

BIVINS, C.J., and APODACA, J., concur.