814 P.2d 104

**Maria D. SANCHEZ, Claimant–Appellee,**

v.

**SIEMENS TRANSMISSION SYSTEMS and Zurich–American Insurance Group, Respondents–Appellants.**

No. 12164.

Court of Appeals of New Mexico.

March 19, 1991.

Certiorari Granted May 16, 1991.

Mark D. Jarner, Jarner & Olona, Los Lunas, for claimant-appellee.

Ray A. Padilla, Padilla, Riley & Shane, P.A., Albuquerque, for respondents-appellants.

## OPINION

CHAVEZ, Judge.

Siemens Transmission Systems and Zurich–American Insurance Group (jointly "employer") appeal a compensation order of the Workers' Compensation Administration (WCA) awarding claimant temporary total disability and other benefits. Employer's brief raises five issues: (1) whether the whole record standard of review supports the workers' compensation judge's (WCJ) finding of total temporary disability as a result of a work-related accident; (2) whether the WCJ erred in awarding claimant vocational rehabilitation benefits; (3) whether the WCJ erred in permitting the hearing on attorney fees to proceed without claimant's presence; (4) whether the award of attorney fees is excessive; and (5) whether the award of post-compensation-order interest is proper. Other issues listed in the docketing statement but not briefed are deemed abandoned. *See State v. Fish,* 102 N.M. 775, 701 P.2d 374 (Ct.App.1985). We affirm as to issues one, three, and five; reverse the award of vocational rehabilitation benefits; and reverse and remand the award of attorney fees.

## INTRODUCTION

The WCJ found that claimant sustained a compensable accidental injury on July 28, 1988, arising out of her employment with Siemens Transmission Systems. Claimant injured her lower back when she lifted forty-pound batteries at work. As a result of the work-related injury to claimant's lower back, the WCJ found claimant to be totally

temporarily disabled. Despite claimant's efforts to return to work, the WCJ found that claimant was unable to perform her job duties or any other work for which she was fitted by age, education, training, general physical and mental capacity, and previous work experience. Claimant has a history of congenital disc disease and upper and lower back problems. However, the WCJ found that the accidental injury, rather than any preexisting condition, caused the disability. In addition to the July 28, 1988, injury, claimant also alleged a work-related injury on March 3, 1988. This claim, however, is not at issue. Claimant voluntarily withdrew the claim for the March 3, 1988, injury on the morning of the formal hearing.

The WCJ awarded claimant compensation benefits in the amount of $4,488.72 plus tax (for past due benefits) in addition to $182.68 per week until further order of the WCA. Further, the WCA found that claimant was entitled to vocational rehabilitation benefits. The WCJ awarded attorney fees in the amount of $9,000.00 (plus tax of 6%), 25% to be paid by claimant and 75% to be paid by employer. Post-compensation-order interest was also awarded at 15%. We discuss other facts pertinent to this appeal under the corresponding issues below.

## 1. WHOLE RECORD REVIEW

The whole record review standard applies to the decisions of the WCA. *Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 767 P.2d 363 (Ct.App.1988). Under whole record review, this court views the evidence in the light most favorable to the WCA decision, but may not view favorable evidence with total disregard to contravening evidence. *See National Council on Compensation Ins. v. New Mexico State Corp. Comm'n*, 107 N.M. 278, 756 P.2d 558 (1988); *Wolfley v. Real Estate Comm'n*, 100 N.M. 187, 668 P.2d 303 (1983). We examine all the evidence bearing on the WCA decision, favorable and unfavorable, in order to determine whether there is substantial evidence and a reasonable basis to support the WCJ's decision. The WCJ's findings will not be disturbed so long as such findings are supported by substantial evidence on the record as a whole. *See Tallman v. ABF (Arkansas Best Freight)*.

On appeal, employer contends the following: (1) there is not substantial evidence to support a finding that the battery-lifting incident of July 28, 1988, caused claimant's disability, and (2) there is not substantial evidence to support a finding of total temporary disability. Applying the whole record standard of review, we address each contention separately.

## A. CAUSATION

First, we review whether or not claimant met her burden of proving a causal connection between her disability and a work-related injury. When the issue of causal connection is disputed, it is incumbent upon the claimant to present expert testimony to prove a causal connection between the disability and a work-related injury. *See* NMSA 1978, § 52–1–28(B) (Repl. Pamp.1987). Such expert testimony must establish causal connection as a medical probability. *See Beltran v. Van Ark Care Center*, 107 N.M. 273, 756 P.2d 1 (Ct.App. 1988); *Hernandez v. Mead Foods, Inc.*, 104 N.M. 67, 716 P.2d 645 (Ct.App.1986).

In this case, claimant presented testimony of four doctors who treated claimant for the injury she suffered from the July 28, 1988, work-related accident. Each doctor testified that claimant's disability had a causal connection to a medical probability to the July 28, 1988, accident. To the extent that the testimony of one of the doctors, Dr. Thorpe, can be read as ambiguous or inconclusive, we note that it is the WCJ's prerogative to determine the weight to be given to the doctor's testimony. The worth of the testimony is viewed as the WCJ viewed it, not as viewed independently by this reviewing court. *See Tallman v. ABF (Arkansas Best Freight)*.

Employer asserts, however, that claimant misrepresented the extent of her injuries to her doctors and failed to provide the doctors with an accurate medical history. Accordingly, it is employer's position that

because the doctors relied on claimant's representations, the doctors' testimony regarding the causal connection between the battery-lifting incident and claimant's disability is not reliable.

To support the proposition that claimant misrepresented the extent of her injuries to her doctors, employer refers this court to the claimant's alleged March 3, 1988, injury (which was voluntarily withdrawn by claimant). Regarding the alleged injury on March 3, 1988, a medical report indicated that claimant "could not use her right arm." Employer notes, however, claimant testified that during this same time period she continued to work on the production line, but could not recall whether she missed any work after the alleged accident. We fail to see how claimant's testimony necessarily constitutes any misrepresentation or conflicts with the medical report. Furthermore, as with the doctors' testimony, the determination of the credibility of claimant's testimony is for the WCJ to determine. *See Marez v. Kerr–McGee Nuclear Corp.*, 93 N.M. 9, 595 P.2d 1204 (Ct.App. 1978).

We also examine the medical history that employer alleges claimant failed to convey to all of her doctors. Although claimant has a history of treatment for back problems prior to the July 28, 1988, accident, these problems are relatively minor. For example, on August 23, 1983, claimant had a complaint of "sciatica," a nerve disorder sometimes associated with lower back problems. In addition, claimant had been in several automobile accidents which resulted in neck injuries. The record also reveals that on May 7, 1987, claimant was treated for lower-back pain as a result of pulling weeds. Claimant also has a medical history of suffering from spinal arthritis.

When informed of claimant's former diagnosis of sciatica, one doctor stated that he "would consider that very significant, and I would consider this [the disability] a continuation of a diseased process more than I would an injury process." However, the same doctor who originally diagnosed the sciatica also testified that the battery-lifting incident was the cause of claimant's disability. Further, the doctor who treated claimant for her automobile injuries testified that the battery-lifting incident caused claimant's injury. This same doctor also testified that any previous problems claimant may have had with sciatica would not change his opinion as to the causal connection. The WCJ had evidence before him of both the claimant's medical history and the doctors' opinions when he made his decision. Again, it is the WCJ's prerogative to determine the weight to be given to each doctor's testimony. *See Tallman v. ABF (Arkansas Best Freight).*

We also consider the fact that claimant was able to work up until, but not after, July 28, 1988, the date of the accident. Assuming without deciding that claimant's prior medical history of back problems, together with any disc degeneration, contributed to claimant's ultimate disability, it still was not unreasonable for the WCJ to find causation based on the doctors' testimony. *See Reynolds v. Ruidoso Racing Ass'n*, 69 N.M. 248, 365 P.2d 671 (1961) (once claimant establishes that work-related injury caused the disability, it matters not whether a pre-existing injury contributed to the ultimate disability); *Sanchez v. Homestake Mining Co.*, 102 N.M. 473, 697 P.2d 156 (Ct.App.1985):

Further, we note that all four doctors also relied on independent medical tests to substantiate claimant's testimony. We are also aware of the testimony of one of claimant's co-workers as demonstrative of a causal connection between the battery-lifting incident and claimant's disability. The co-worker testified that on the day of the injury, July 28, 1988, claimant asked for help in finishing the battery-lifting job and complained that she hurt her back lifting the batteries.

We have considered both the testimony of claimant's doctors and the independent medical tests. Upon review, we cannot say that it was unreasonable for the WCJ to find claimant's disability the result of a work-related injury.

**B. TOTAL TEMPORARY DISABILITY**

Apart from the issue of causation, we also examine employer's contention that

there is insufficient evidence to support the WCJ's finding of total temporary disability. Total disability depends on a finding that (1) claimant is totally unable to perform the work she was doing at the time of the injury, and (2) claimant is unable to perform any work for which she is suited by age, education, training, general physical and mental capacity and previous work experience. *See* NMSA 1978, § 52–1–25 (Repl.Pamp.1987); *see also Medina v. Wicked Wick Candle Co.*, 91 N.M. 522, 577 P.2d 420 (Ct.App.1977).

 In disputing the WCJ's finding of total temporary disability, employer primarily attacks claimant's credibility and incentive to work. For example, employer points out that light-duty work was offered to claimant, but claimant refused to perform the work. The work was approved by claimant's treating doctor after an on-site examination of the job. Evidence was presented, however, that claimant's refusal was based on her inability to do the work. A different doctor testified that at home claimant uses a heating pad, frequently changes positions, lies down, takes hot baths and hot showers, and relies on medication. In light of these factors and the results of medical tests, this doctor stated his opinion that claimant was not capable of working eight hours a day, whether or not the job allowed sitting or standing. This doctor also testified that he had known claimant for seventeen years, considered her a forthright person, and believed she was telling the truth regarding her pain and inability to work.

Contrary to the doctor's testimony above, another doctor concluded that claimant was capable of light work and that there was an insufficient basis to understand claimant's inability to work. However, somewhat inconsistently, this same doctor had previously informed claimant's employer that "it would certainly be understandable for [claimant] to be considered unsuitable for work." Again, we note that the weight and credibility to be given to the testimony of each witness is the WCJ's prerogative. *See Montano v. Saavedra*, 70 N.M. 332, 373 P.2d 824 (1962) (conflicts in testimony

are for the hearing officer to reconcile); *Marez v. Kerr–McGee Nuclear Corp.*

Employer argues that there was no objective evidence to substantiate claimant's inability to work. We disagree. In addition to the testimony of claimant and the doctors, medical tests substantiated claimant's disability. Both X-rays and a CAT-scan revealed an abnormality at the L5–S1 lower-back area. These tests showed a vacuum phenomena at the L5–S1 area, indicative of disc degeneration. Claimant suffered a herniated disc and circumferential bulging at the L5–S1 level. Results of a MRI further substantiated claimant's complaints, revealing a central disc herniation at the L5–S1 area.

Claimant experienced severe distress with a rigid back and paravertebral lumbar spasm. Claimant experienced pain down both legs, indicative of acute lumbar sprain and sciatica. One doctor testified that claimant's range of motion was normal with continued improvement. Contrary to this testimony, however, another doctor testified that the severity of claimant's back pain made it difficult for claimant to walk, bend, lift, push, or pull, resulting in only a 50% range of motion. This conflicting testimony was before the WCJ. It is the WCJ's prerogative to reconcile and weigh conflicting testimony. *See Montano v. Saavedra; Marez v. Kerr–McGee Nuclear Corp.* Thus, we cannot conclude that the WCJ's finding of claimant's disability and inability to work was unreasonable.

Employer further attacks claimant's credibility as questionable and unreliable because claimant did not immediately inform employer of the July 28, 1988, injury. The work-related injury allegedly occurred on July 28, 1988. The co-worker's testimony indicates that claimant complained of back pain on July 28, 1988, yet continued to work. Subsequently, on August 1, 1988, claimant reported to the employer's clinic that she experienced back pain on July 29, 1988, while sitting at a work meeting. Claimant was examined and provided with medication. On August 5, 1988, claimant indicated to her supervisor and doctor that

the pain she experienced resulted from the July 28, 1988, battery-lifting incident.

Employer suggests that claimant fabricated the July 28, 1988, work incident. Employer contends that claimant fabricated the incident in order to avoid both payment of medical bills and having to stay in the packing department, a position disliked by claimant. In arguing this contention, employer asserts that the lag-time in reporting the battery-lifting incident supports the allegation of fabrication. We note, however, that claimant's injury is not necessarily of the type that is immediately discernible. Two of claimant's doctors testified that it is not uncommon to not have any significant pain the day of the injury. Rather, the doctors noted that the pain typically intensifies the day after the accident and gradually worsens. *See Speciality Cabinet Co. v. Montoya,* 734 P.2d 437 (Utah 1986) (progressive back injury compensable even though not immediately discernible). Therefore, it is entirely plausible that claimant was unable to connect the battery-lifting incident to her pain until after a short time-lag. Consequently, we cannot conclude that it was unreasonable for the WCJ to rely on claimant's testimony as credible.

Further, to the extent that employer contends that claimant's testimony is insufficient as evidence of an inability to return to work, we refer to *Garcia v. Genuine Parts Co.,* 90 N.M. 124, 560 P.2d 545 (Ct.App. 1977) (employee's own testimony was substantial evidence supporting finding that she was totally disabled by work-related back injury). As such, we do not agree with employer that reliance on claimant's testimony contravenes a legislative intent to avoid liberally construing the Workers' Compensation Act in favor of either the claimant or employee. *See* NMSA 1978, § 52–5–1 (Cum.Supp.1990).

In addition, we are not persuaded by employer's argument that one doctor's conclusion of a 5% impairment is inconsistent with claimant's inability to return to work. *See Tallman v. ABF (Arkansas Best Freight)* (a 5% impairment may translate into temporary total disability if claimant establishes an inability to perform job duties). We also note that this doctor's testimony is not conclusive. Another doctor disagreed with the conclusion that claimant suffered a 5% impairment. Instead, this doctor estimated claimant's impairment to be between 15% and 18%.

In light of the above-mentioned medical tests and testimony, we cannot say that it was unreasonable for the WCJ to find claimant to be temporarily totally disabled as a result of a work-related injury. Therefore, we affirm as to this issue.

## 2. AWARD OF VOCATIONAL REHABILITATION BENEFITS

Employer contends that the WCJ erred in awarding claimant vocational rehabilitation benefits. Claimant's claim for vocational rehabilitation benefits is governed by the law applicable at the time she suffered the work-related injury. The applicable statute, NMSA 1978, Section 52–1–50(C) (Cum.Supp.1990), provides in pertinent part:

> When, as a result of the injury, the worker is unable to perform the pre-injury job with the same employer or unable to perform modified work with the same employer, he shall be entitled to vocational rehabilitation evaluation, counseling and training if necessary to return the worker to either a job related to his former employment or suitable employment in a nonrelated field. * * *

It is the claimant's burden to establish the need for vocational rehabilitation benefits. *See Gutierrez v. Amity Leather Prods. Co.,* 107 N.M. 26, 751 P.2d 710 (Ct.App. 1988). In *Jaramillo v. Consolidated Freightways,* 109 N.M. 712, 790 P.2d 509 (Ct.App.1990), we noted that proof of need for vocational rehabilitation services requires evidence of the following: (1) that, as a result of a compensable injury, the worker is unable to return to his or her former employment, or is permanently unable to some percentage or extent to perform work for which he or she has previous training or experience, and (2) that the worker is a proper candidate for and in need of vocational rehabilitation. Once

claimant has met this two-pronged test, the right to vocational rehabilitation benefits is mandatory. *See id.* at 716, 790 P.2d at 513; *Lopez v. Smith's Management Corp.*, 106 N.M. 416, 744 P.2d 544 (Ct.App.1986).

■ In the present situation, claimant met the first prong by presenting evidence of total temporary disability and a resultant inability to return to any employment. To meet the second prong, claimant was required to show that there is a likelihood that rehabilitation will enable her to return to suitable employment. *See Jaramillo v. Consolidated Freightways.* Thus, it was necessary for claimant to present evidence to show what, if any, rehabilitation was necessary to restore claimant to suitable employment. *See Lopez v. Smith's Management Corp.*

Claimant's proposed finding of fact No. 7 states: "claimant has had no other significant vocational training of any kind other than that experience that she acquired from various employments." Claimant's requested conclusion of law No. 6 states: "claimant is entitled to vocational rehabilitation benefits in accordance with the New Mexico's Workmen's Compensation Act." The WCJ's final compensation order subsequently concluded that "claimant is entitled to vocational rehabilitation." Other than this, claimant presented no findings, nor evidence, to show that she is a proper candidate for and in need of vocational rehabilitation benefits. Therefore, we hold that claimant has not sufficiently met the second prong as set forth in *Jaramillo.*

Claimant also argues that the legislature in 1987 amended Section 51–1–50 to provide for a right of "referral for an evaluation of a worker for suitability for vocational rehabilitation services." NMSA 1978, § 52–1–50(F) (Repl.Pamp.1987). We do not think this language aids claimant in the instant case. In order to establish a right to a referral for evaluation, claimant must first offer proof that she notified her employer in writing that she was released "within one hundred twenty days from the date that [she] is released from regular treatment by [her] primary treating health care provider." Section 52–1–50(E).

Claimant has not pointed to any evidence in the record where this requirement has been satisfied.

We are not persuaded by claimant's argument that the same evidence that establishes her disability and inability to return to work is sufficient proof that claimant is a proper candidate for vocational rehabilitation benefits. Simply because claimant is disabled does not necessarily establish a need for rehabilitation. *See Lopez v. Smith's Management Corp.* (vocational rehabilitation is inappropriate when there is little possibility of claimant ever resuming any remunerative employment); *Nichols v. Teledyne Economic Dev. Co.*, 103 N.M. 393, 707 P.2d 1203 (Ct.App.1985) (workers are not entitled to benefits merely because of an inability to return to their former job). Further, even assuming that claimant is entitled to rehabilitation benefits, no evidence was presented regarding the extent of vocational rehabilitation necessary. Without such evidence, the WCJ would have no basis for an award of benefits.

As observed in Annotation, *Worker's Compensation: Vocational Rehabilitation Statutes*, 67 A.L.R. 4th 612, at 625 (1989), not all injured workers are entitled to vocational rehabilitation benefits:

Generally speaking, a worker's injuries must have left the worker permanently unable to function adequately in a job for which previous training or experience had prepared him or her, and the injured employee must need vocational rehabilitation in order to restore him or her to a job as remunerative, or nearly as remunerative, as the one held at the time of injury. *An initial determination of permanent disability has been deemed a requisite for vocational rehabilitation benefit eligibility, and employees who have sustained injuries which do not leave them permanently impaired have been held ineligible for vocational rehabilitation benefits.* [Emphasis added.]

■ Claimant also raises an argument that part two of the two-prong test set forth in *Jaramillo* is not applicable to the present situation. We disagree. Claim-

ant's claim for vocational rehabilitation benefits is governed by the law in effect at the time of the work-related accident. *See Varos v. Union Oil Co. of Calif.*, 101 N.M. 713, 688 P.2d 31 (Ct.App.1984). In *Jaramillo*, NMSA 1978, Section 52–1–50 (Repl. Pamp.1983) was the applicable provision. Our examination of the provisions of Section 52–1–50, as amended in 1987, does not, we conclude, evince a legislative intent to abrogate the requirements of *Jaramillo* or *Lopez*. Instead, we think the language of Section 52–1–50(E) and (F) indicates the adoption of an additional requirement of written notice to the employer as a prerequisite of entitlement to vocational rehabilitation. Further, we are obligated to take the statute as we find it and construe it according to the plain meaning of the language employed. *See State v. Pedroncelli*, 100 N.M. 678, 675 P.2d 127 (1984); *Perea v. Baca*, 94 N.M. 624, 614 P.2d 541 (1980). Accordingly, we are unable to interpret the statute as suggested by claimant.

In conclusion, we determine that there was not sufficient evidence to support the WCJ's award of vocational benefits. Accordingly, we reverse the award.

## 3. PRESENCE OF CLAIMANT AT HEARING ON ATTORNEY FEES

■ Employer contends that the WCJ erred in permitting the hearing on attorney fees to proceed without claimant in attendance. Employer properly preserved this issue at the hearing on attorney fees. Regarding claimant's absence at the hearing for attorney fees, employer raises two arguments.

First, employer contends that the claimant's presence was necessary in order to determine if any agreement was reached between the claimant and her attorney regarding the payment of fees. NMSA 1978, Section 52–1–54(H) (Cum.Supp.1990) provides that the payment of attorney fees "shall be shared by the worker and the employer, with the worker paying one-fourth of the amount" and the employer paying three-fourths of the amount. Because of this shared responsibility for attorney fees, employer argues that claim-

ant's attorney fees may have been inflated in order to compensate for an arrangement between claimant and her attorney to reduce the amount of fees owed by claimant.

We agree with claimant's attorney, however, that the employer's attorney could have cross-examined claimant's attorney at the hearing to determine if there was any such agreement and subsequent inflation of fees. Further, even if claimant should have been present at the hearing, it was harmless error. Employer has not shown how it was prejudiced by the absence of claimant at the hearing. *See Sosa v. Empire Roofing Co.*, 110 N.M. 614, 798 P.2d 215 (Ct.App.1990) (it is not dispositive on the issue of attorney fees whether claimant's counsel waived the portion of fees for which claimant is responsible); *see also State v. Wright*, 84 N.M. 3, 498 P.2d 695 (Ct.App.1972).

Second, employer contends that the statutory allocation of attorney fees, requiring claimant to pay 25% of her attorney's fees, placed claimant and her attorney in an adversarial relationship. Consequently, employer contends that the resultant conflict of interest required the presence of claimant at the hearing. To the extent that employer attempts to raise this issue on claimant's behalf, however, we fail to see how employer has standing. *See State ex rel. Overton v. New Mexico State Tax Comm'n*, 81 N.M. 28, 462 P.2d 613 (1969).

Thus, we disagree with employer's position and hold it was not error for the WCJ to proceed without claimant's presence at the hearing on attorney fees. Accordingly, we affirm as to this issue.

## 4. AWARD OF ATTORNEY FEES

Employer contends that the WCJ's award of attorney fees to claimant's attorney is excessive and inappropriate. We agree and reverse and remand for three reasons.

First, we remand in light of our holding that the WCJ erroneously awarded claimant vocational rehabilitation benefits. To the extent that the WCJ considered the success of claimant's attorney in obtaining vocational rehabilitation benefits, we re-

verse and remand for a redetermination of attorney fees.

■ Second, we reverse and remand to the extent that the WCJ considered the hours expended by claimant's attorney before claimant's benefits were terminated. At the hearing on attorney fees, claimant's attorney argued that he is entitled to fees for services rendered before the case is actually filed (benefits terminated). Specifically, claimant's attorney argued that time spent before the case is filed is (1) essential to monitor the status of claimant's situation and to answer claimant's questions, and (2) to let the insurance adjuster know that someone is looking out for claimant's best interests. We disagree and hold that claimant's attorney is not entitled to attorney fees for services rendered before benefits were terminated.

In workers' compensation cases, the recovery of compensation is a prerequisite to the allowance of attorney fees. *See Morgan v. Public Serv. Co. of N.M.*, 98 N.M. 775, 652 P.2d 1226 (Ct.App.1982); *Montoya v. Anaconda Mining Co.*, 97 N.M. 1, 635 P.2d 1323 (Ct.App.1981). Therefore, as a prerequisite for the award of attorney fees, benefits must first be terminated. Otherwise, no benefits have inured to claimant as a result of the attorney's services. *Cf. Provencio v. New Jersey Zinc Co.*, 86 N.M. 538, 525 P.2d 898 (Ct.App.1974) (award of attorney fees not abuse of discretion where claimant benefited from counsel's representation). Accordingly, it is improper to award attorney fees for hours expended before benefits are terminated.

At the hearing for attorney fees, claimant's attorney indicated that he expended 118 hours on this case. Of this 118 hours, 11.5 hours were expended for attorney services incurred before April 13, 1989, the date that employer terminated claimant's benefits. The WCJ, in the supplemental findings and conclusions of law, found that the time reasonably spent by claimant's attorney was 111 hours. Thus, it appears that the WCJ may have considered a portion of the 11.5 hours in the award of attorney fees. To this extent, we reverse and remand for a redetermination of attorney fees.

■ Third, we reverse and remand for a redetermination of attorney fees in consideration of the factors set forth in Section 52-1-54(D), *Woodson v. Phillips Petroleum Co.*, 102 N.M. 333, 695 P.2d 483 (1985), and *Fryar v. Johnsen*, 93 N.M. 485, 601 P.2d 718 (1979).

The WCJ awarded claimant $4,448.72 for past benefits, plus $182.68 a week until further order of the WCA. In *Fitch v. Sam Tanksley Trucking Co.*, 95 N.M. 477, 623 P.2d 991 (Ct.App.1980), we indicated that, in the absence of evidence that benefits will continue beyond the six-month period set forth in NMSA 1978, Section 52-1-56 (Cum.Supp.1990), the present value of the award cannot be based on the total anticipated benefits for the entire period of claimant's statutory entitlement. *See also Jennings v. Gabaldon*, 97 N.M. 416, 640 P.2d 522 (Ct.App.1982), *overruled on other grounds*, 102 N.M. 333, 695 P.2d 483 (1985). Consistent with these cases, employer did not consider the $182.68 a week beyond the six-month period. Thus, in the brief-in-chief, employer contends that the present value of claimant's award is $9,238.40. Employer calculated the figure of $9,238.40 as follows: $4,448.72 as past benefits, plus an additional $4,749.68 in compensation benefits for the six-month period following the award. Claimant does not dispute this amount; therefore, we consider $9,238.40 as the present value of claimant's award.

■ In the present situation, the WCJ awarded attorney fees in the amount of $9,000.00 plus tax of 6% ($9,540.00). The award of attorney fees is equivalent to 102% of the final award. The general range for attorney fees in workers' compensation cases is between 6% to somewhat less than 25%. *Woodson v. Phillips Petroleum Co.; Smith v. Trailways, Inc.*, 103 N.M. 741, 713 P.2d 557 (Ct.App.1986). However, this is simply a useful range and each case must be judged on its own merits. *See Woodson v. Phillips Petroleum Co.; Shadbolt v. Schneider, Inc.*, 103 N.M. 544, 710 P.2d 738 (Ct.App.), *rev'd on other*

*grounds,* 103 N.M. 467, 709 P.2d 189 (1985).

■ When determining reasonable attorney fees, the WCJ must consider the present value of the award made in the claimant's favor. § 52–1–54(D)(2). However, the amount of the worker's award is not the sole inquiry. *See Woodson v. Phillips Petroleum Co.; Amos v. Gilbert Western Corp.,* 103 N.M. 631, 711 P.2d 908 (Ct.App.1985). Other factors to consider are those set forth in *Fryar* (success of claimant, extent to which issues contested, complexity of the issues, experience of attorney, cost of living, and time/effort expended). Clearly, an award of attorney fees must have evidentiary support. *See Woodson v. Phillips Petroleum Co.; Candelaria v. General Elec. Co.,* 105 N.M. 167, 730 P.2d 470 (Ct.App.1986). The WCJ, however, is not required to make a finding of fact on each factor set forth for attorney fees under *Fryar. See Sanchez v. Homestake Mining Co.; Paternoster v. La Cuesta Cabinets, Inc.,* 101 N.M. 773, 689 P.2d 289 (Ct.App.1984).

In the present situation, the record discloses that most of the factors enumerated in *Fryar* were considered by the WCJ at the hearing to determine attorney fees. The WCJ entered subsequent findings to support the award of attorney fees. The WCJ noted the substantial success of the claimant and that claimant's attorney reasonably spent 111 hours on the case. The WCJ also found that the issues were seriously contested and complex due to the volume of medical testimony. In addition, the WCJ noted that the skill and experience of the claimant's attorney is high, with good standing in the legal community. Further, an examination of the record reveals the following: six depositions were taken, five of which concerned medical witnesses; one set of interrogatories and a one-day formal hearing.

The amount of attorney fees is within the discretion of the WCJ and should be disturbed only if the WCJ acted beyond reason. *See Manzanares v. Lerner's, Inc.,* 102 N.M. 391, 696 P.2d 479 (1985). Judicial discretion is abused when the action taken is arbitrary and capricious. *See Alber v. Nolle,* 98 N.M. 100, 645 P.2d 456 (Ct.App. 1982). In the present situation, an attorney fees award of 102% of the present value of claimant's award is outside the parameters of what we consider permissible. Although the issues were hotly contested, they were not particularly unusual or complex. *See Board of Educ. of Espanola Mun. Schools v. Quintana,* 102 N.M. 433, 697 P.2d 116 (1985) (attorney fees excessive when 60% of claimant's recovery). In light of the principles set forth in *Woodson,* we hold that claimant's award for attorney fees is excessive. Therefore, we reverse and remand for a reconsideration of fees within the permissible range as discussed in *Woodson.*

5. POST–COMPENSATION ORDER INTEREST

■ In the final compensation order, the WCJ awarded claimant post-judgment interest in the amount of 15%. The issue presented is whether the Workmen's Compensation Act permits an award of post-compensation-order interest.

NMSA 1978, Section 56–8–4 (Repl.Pamp. 1986) provides interest at the rate of 15% on judgments and decrees from the date of the entry of the final judgment or decree. Post-judgment interest, as provided for in Section 56–8–4, has traditionally been applied to workers' compensation cases decided at the district court level. *See Mares v. Valencia County Sheriff's Dep't,* 106 N.M. 744, 749 P.2d 1123 (Ct.App.1988); *Lopez v. Smith's Management Corp.* These cases, however, were decided before the current Workmen's Compensation Act became effective on July 1, 1987. *See* NMSA 1978, § 52–5–1 (Repl.Pamp.1987). Proceedings under the current Act provide the WCJ with authority to conduct hearings and enter final orders for the payment of benefits. *See* NMSA 1978, §§ 52–5–6, –7, (Cum. Supp.1990).

On appeal, employer argues that an award of post-judgment interest is not applicable to compensation orders issued from the WCA. NMSA 1978, Section 52–5–15 (Cum.Supp.1990) provides in part:

All awards shall be against the employer for the amount then due and shall contain an order upon the employer for the payment to the worker, at regular intervals during the time he is entitled to receive compensation, of the further amounts he is entitled to receive.

Employer argues that nothing in the 1987 Act suggests that the above phrase "the amount then due" includes any post-compensation-order interest. Employer refers this court to the decision in *United States v. Austin*, 614 F.Supp. 1208 (D.N.M.1985), for the proposition that in the absence of a clearly expressed legislative intention to the contrary, the language of a statute is conclusive.

We agree that we cannot add a requirement that is not provided for in the statute. *See Amerada Hess Corp. v. Adee*, 106 N.M. 422, 744 P.2d 550 (Ct.App.1987). Nor may we read into the statute language that is not there. *See General Motors Acceptance Corp. v. Anaya*, 103 N.M. 72, 703 P.2d 169 (1985). However, we are also obligated to read the Workmen's Compensation Act in its entirety and construe each part in connection with every other part to produce a harmonious whole. *See State ex rel. Klineline v. Blackhurst*, 106 N.M. 732, 749 P.2d 1111 (1988); *Security Escrow Corp. v. State Taxation & Revenue Dep't*, 107 N.M. 540, 760 P.2d 1306 (Ct.App.1988). In the present situation, a review of the Workmen's Compensation Act as a whole demonstrates a legislative intent to apply post-judgment interest to final compensation orders.

For example, NMSA 1978, Section 52-5-8(B) (Cum.Supp.1990), provides that "[a] decision of a workers' compensation judge is reviewable by the court of appeals in the manner provided for other cases * * *." Thus, as with workers' compensation cases evolving from the district court level, appellate review is limited to review of the final order of the WCA. *See Johnson v. C & H Constr. Co.*, 78 N.M. 423, 432 P.2d 267 (Ct.App.1967). Accordingly, we see no reason why the same rationale for allowing post-judgment interest in workers' compensation cases in district courts would not apply to administrative decisions evolving

from the WCA. We note that the primary policy behind post-judgment interest is to prevent the inequity of denying the prevailing party the cost of the lost opportunity to use the money of which the judgment debtor had use during the pendency of appeal. *See Ulibarri v. Gee*, 107 N.M. 768, 764 P.2d 1326 (1988); *Genuine Parts Co. v. Garcia*, 92 N.M. 57, 582 P.2d 1270 (1978). A holding that would not extend this policy to appeals from the WCA would contravene common sense and reason, resulting in unreasonable results. *See Shaw v. Warner*, 101 N.M. 22, 677 P.2d 635 (Ct.App.1984); *State v. Tapia*, 89 N.M. 221, 549 P.2d 636 (Ct.App.1976). Accordingly, we hold that there is a legislative intent to apply Section 56-8-4 to final compensation orders.

Further, in *Candelaria v. General Electric Co.*, we noted that "[t]here is nothing which indicates that Section 56-8-4(A) should not apply in workmen's compensation cases." *Id.* 105 N.M. at 176, 730 P.2d at 479. Our point in *Candelaria* was to ensure that the policy behind post-judgment interest in non-workers' compensation cases is also applied to workers' compensation cases. Whether a final decision evolves from the district court or from the WCA is not a valid distinction and thus the policy remains unchanged. Therefore, we hold that the WCJ correctly allowed a 15% post-judgment interest from the final compensation order. Any award of post-judgment interest under the award does not commence to run, however, until the time fixed for its payment. *See, e.g., Mares v. Valencia County Sheriff's Dep't*, 106 N.M. 744, 749 P.2d 1123 (Ct.App.1988).

We also address claimant's request that claimant be awarded reasonable attorney fees for the work necessitated by the employer's appeal. Claimant is not entitled attorney fees for its defense of issue three. *See Archuleta v. Safeway Stores, Inc.*, 104 N.M. 769, 727 P.2d 77 (Ct.App.1986). However, we award claimant attorney fees in the amount of $1,000.00 for claimant's successful defense of issues one and five.

## CONCLUSION

To conclude, we affirm the WCJ on issues one, three, and five; reverse the

WCJ's award of vocational rehabilitation benefits; and reverse and remand for a redetermination of attorney fees.

IT IS SO ORDERED.

ALARID and DONNELLY, JJ., concur.